# THE BOARD OF POLICE COMMISSIONERS FOR THE CITY OF BALTIMORE ET AL. *vs.* HENRY WAGNER.

*Summary Seizure of Property Designed to be Used in Violation of Law—Police Power—Due Process of Law.*

Articles which are designed to be used in violation of the criminal law, and which can be used for no legitimate purpose, may be summarily seized by the police authorities under a statutory power to prevent crime ; and the seizure of such articles is not a taking of property without due process of law, within the constitutional inhibition.

The Courts will not entertain an action of replevin to recover property taken from the plaintiff by the police, when the plaintiff intended to use it in violation of the criminal law, and it is capable of no legitimate use.

It is the statutory duty of the Police Commissioners of Baltimore City to prevent crime and to see that all laws relating to gambling are enforced. They seized and took from plaintiff's possession a slot machine, when there was no charge pending against him for violation of the law. In an action of replevin for the same it was admitted by the pleadings that the slot machine is a gambling device designed to be used by the plaintiff and others in violation of the gambling laws of the State ; that it could be put to no legitimate use and that it was taken by the defendants in the discharge of their official duty. *Held,*

1st. That under these circumstances the defendants were authorized to seize the machine for the purpose of preventing a violation of the law.

2nd. That the plaintiff cannot maintain replevin to recover possession of the article, being a gambling device, because his intention to use it for an illegal purpose destroys his right to ask for the aid of the Courts.

Appeal from a judgment of the Superior Court of Baltimore City (STOCKBRIDGE, J.), in favor of the plaintiff for the property replevied.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alonzo L. Miles*, for the appellant.

The contention of the appellant is that the action of replevin will not lie to recover such property from the police officers of the State. In other words, that the law will not give its protection to those articles of property, which are *malum in se*, and which can only be used in violation of the public peace and morals. Such property, because of its spurious or hurtful character, on strict grounds of public policy, is subject to summary seizure under general police regulations. 2 *Schouler's Personol Property*, sec. 24; *Spalding* v. *Preston*, 21 Vt. 9; *State* v. *O'Neil*, 58 Vt. 163.

By section 744 of chapter 123, of the Acts of 1898, it is made the duty of the Board of Police Commissioners to preserve the public peace, prevent crime  · * * *   prevent and remove nuisances in all the streets and highways, · and all other· places, see that all laws relating to gambling, &c., are enforced. By section 132 of Article 27, of the Code of Public General Laws, police officers are "required to visit all places where they shall suspect gaming tables are kept." Under these statutory provisions, it is not only the right, but the duty of police officers, in the exercise of that *preventive justice*, which is essential to the maintainance of the public peace and morals of the community, to seize all such instrumentalities of crime as may come within their view, one of the most notorious of which is the *slot machine*.

There can be no property rights in such an offensive and offending thing that the Courts will respect, and therefore, the taking and detention of such spurious property, under the general police powers, cannot be considered in violation of that provision of the Constitution which declares that "no person shall be deprived of life, liberty or property without due process of law." *Deems* v. *Mayor and City Council*, 80 Md. 164; *Eichenlaub* v. *City of St. Joseph*, 113 Mo. 395; *Mugler* v. *Kansas*, 123 U. S. 623; *Barbier* v. *Connelly*, 113 U. S. 31. It is upon the same principle that a person may, under certain circumstances, be arrested without a warrant, and thus deprived of his liberty without due process of law. *Roddy* v. *Finnegan*, 43 Md. 504; *B. & O. R. R. Co.* v. *Cain*, 81 Md. 87.

*W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellee.

*The contention of the appellant*, the defendant below, is that the allegations of the third plea show that the musical slot machine replevied was a gambling device, and therefore did not constitute such an article of *property* as Courts of Law would sustain any action concerning; or, in other words, that the said musical slot machine was practically legally excommunicated from property rights.

*The contention of the appellee is* that the musical slot machine, even though a gambling device, is nevertheless the subject of property, and that the replication shows that the said machine was seized and taken away from the plaintiff by the defendents *without due process of law.*

The machine in this case, was appraised at $125. If the defendant had succeeded in the trial in the Court below the verdict would have fixed the value of the machine, and the plaintiff would have been compelled to return the machine or its value to the defendants. If the machine had been stolen the thief could have been indicted for its larceny. If the police officers who seized the same had done so stealthily and for their own private uses and purposes, and not by virtue of orders and openly, they could have been prosecuted. If a neighbor

of the plaintiff had entered the latter's place and destroyed the machine could he not have been sued for damages? If then the machine must be regarded as property in the above cases, why not in this? If we correctly understand the position of the appellant it is that by reason of the allegations of the third plea the machine was *outlawed*. *But why?* It is to be care-fully noted that the plea does not allege that the machine had already been put to any criminal use, or was at the time of its seizure being put to any criminal use, but only that such use was intended. The plea does not even state that an unlawful use was attempted. Now it is very clear that the plea states no violation of law, nor any attempted violation thereof. An indictment against the plaintiff formally stating the allegations of the plea would be demurrable.

So much for the *reason* of the matter. How is it on *author-ity?* The proposition of the appellant has frequently been ad-vanced in cases concerning intoxicating liquors in States hav-ing prohibitory laws concerning the same, and the contention has been almost invariably overruled by the Courts. *Common-wealth* v. *Coffee*, 9 Gray (Mass.) 139; *Brown* v. *Perkins*, 12 Gray, 89; *Fuller* v. *Bean*, 30 N. H. 181 ; *Com.* v. *Rourke*, 10 Cush. 397; *Monty* v. *Arneson*, 25 Iowa, 383.

It is not disputed by the appellee that the State could pass laws of confiscation against slot machines, provided they were reasonable in their operation and provided for notice to the owner and opportunity to be heard. But the appellee says that there is now no such law in this State. Again, if the own-ership of such a machine were unlawful it might be that no civil action could be maintained with respect to the same; but there is no law in this State making the ownership of such a machine unlawful. Only its actual use and operation is con-demned ; and such actual use is not alleged by the appellant.

The statement in 2 *Schouler's Per. Prop.*, sec. 24, that burglars' and gamblers' tools are not subjects of larceny, is questioned and the accuracy thereof denied by the appellee. The author cites no case in support thereof. We know of none. The statement is contrary to the elementary ideas of the law of

larceny, which makes all chattels of value the subject of larceny, and the statement is directly contradicted by the only case in point that we do know of *Bales* v. *State*, 3 W. Va. 685, in which it was held that larceny may be committed of poker chips used for gaming purposes. In this case the Court did say that the guilty keeper could not sustain an action to recover them, but there was a statute which expressly authorized a search warrant to be issued for the seizure of such articles, wherever found, subject to the jurisdiction of the justice, and ordered them to be burned. There is no such statute in this State.

Did the Police Board, in the manner of seizure of this slot machine, act with authority and with due process of law? Without stopping to review the many decisions upon the subject of due process of law, we may assume that an act by which a citizen is deprived of his property, which is taken from his possession without his consent, and practically confiscated without notice to him or opportunity to be heard upon the seizure, is not due process of law, in the absence of some express and clear statutory enactment in justification thereof. Now, what was done in the case as the pleadings show? The Police Board, acting by its officers, seize the machine and detain it. No charge of any kind is preferred by it or anyone against the owner, the plaintiff, or anyone else. The machine was not seized, nor was it held for the purpose of use as evidence against anyone. It does not appear how long the Police Board intended to retain it, or that they ever intended to restore it to the plaintiff. The indications, however, are that they never intended to return it. Nor does it appear whether the Police Board would ultimately destroy the machine, or in what manner they would dispose of it. The clear thing, however, is, that the plaintiff was deprived of his property. It is not contended by the appellants that there is any express statutory authority for this action.

As was said by JUDGE STOCKBRIDGE in his opinion on overruling the demurrer, it is hard to think that in the general language used in the City Charter the Legislature intended to convey any such broad and sweeping power as was in this

case exercised.   There was no change in this section by the Act of 1898, it being the same as sec. 725 of Art. 4, Public Local Laws, before the enactment of the new City Charter. No such power had ever before been claimed by former Police Boards ; if the power ever existed it has until this time lain dormant.   The utmost that the Police Board has ever heretofore attempted to do was to seize and hold property as evidence pending a trial of a person arrested or regularly indicted.   The board has never heretofore attempted or claimed the right to proceed directly against property or confiscate the same.

In this connection sec. 132 of Art. 27 of the Code of Public General Laws is to be noted.   This section provides : "All constables and police officers are required to visit all places where they shall have reason to suspect gaming tables are kept, and to have prosecuted all persons offending against the laws prohibiting gambling."   This section clearly marks out the duties of the Police Board.   If they suspected the machine seized in this case was used for gambling purposes, it was their duty to arrest and prosecute the plaintiff, the owner, and the machine could have been seized and held as evidence pending the trial.   At the trial the plaintiff in this case could have been heard.   But under the manner adopted by the board in this case, no such opportunity to be heard as to the character of the machine was afforded the plaintiff, and it is this which constitutes his grievance and shows the injustice and illegallity of the mode of seizure.   Instead of a judicial inquiry as to the character of the machine in question, and its lawful or unlawful use, the Police Board undertook to decide the whole matter itself and without notice of any kind to the plaintiff.

It must also be noted that secs. 122 to 132 of Art. 27, P. G. L., relating to gaming, do not prohibit or punish the mere possession or ownership of a gambling device.   It is only the keeping and use of such devices in public places, or places open to the public generally that is prohibited and punished. Poker chips are gambling devices, and frequently used as such in private houses without violation of law.   If the Legislature

had thought it necessary, it would have provided that the
mere possession of such gambling devices should be unlawful,
just as it has done with reference to the possession of lottery
tickets and with some qualification the carrying of concealed
weapons.

It was also urged at the argument below by the defendant's
counsel that the power sought to be here invoked was neces-
sary to enable the Police Board to enforce the law ; that it
was difficult to secure convictions, etc.   Just such an argu-
ment was made before 1894 in reference to the lottery law
which led to the amendment of that year.   It may be that a
similar amendment is now necessary in reference to slot ma-
chines.   But this difficulty of securing evidence to obtain con-
victions for keeping slot machines has apparently not existed
heretofore, as the many convictions on the records of the
Criminal Court seem to indicate.   And this is at most an ar-
gument for the convenience of the Police Board in this special
case at the expense of well-settled principles of law.

From the above considerations the appellee submits that it
is perfectly apparent that the Police Board acted entirely with-
out authority and in utter disregard of due process of law in
seizing and holding the slot machine of the plaintiff.   And
consequently the machine, while in the possession of the
Police Board, not being properly *in custodia legis*, was properly
replevied by the plaintiff.   While the plaintiff might well rest
his case here without further argument, yet so strong is his
position and so weak that of the Police Board, that the action
of the latter would have been illegal had there been a statute
expressly authorizing it to act in the manner it did, for such
statute would have been unconstitutional and in conflict with
Art. 23 of the Bill of Rights of Maryland and the Fourteenth
Amendment to the Constitution of the United States.   Bear-
ing in mind the facts of this case a reference to some of the
adjudged cases will make this plain.   The case of *Lowry* v.
*Rainwater*, 70 Mo. 152, is most in point.   In this case, a statute
which authorized the President of the Board of Police Com-
missioners of the city of St. Louis, upon information or per-

sonal knowledge, that there is any prohibited gaming table or
other gaming device kept within his district to cause the same
to be seized and brought before him and publicly destroyed,
and made no provision for judicial condemnation, was held to
violate the constitutional prohibition against unreasonable
seizures, and against the taking of property without the pro-
cess of law, and was therefore void.    The fifth section of the
Act in question provided for the seizure, and the seventh for
the destruction of the gambling device.

In *Greene* v. *James*, 2 Curtis (U. S. C. C.) 187, the Act of
the Legislature of Rhode Island, passed at the January session,
1855, entitled "An Act for the more effectual suppression of
drinking houses and tippling shops," so far as it authorized a
seizure of property, was held in conflict of the Constitution of
the State, because it did not provide for notice to the owner,
by due legal means, of the nature and cause of the accusation,
nor for a trial of the question, whether the liquors seized were
held for sale in violation of law.

As to the necessity of provisions for giving notice to the
owner upon seizure or condemnation of his property under
statutes therefor, see *Scharf* v. *Tasker*, 73 Md. 378; *Ulman* v.
*Mayor and City Council*, 72 Md. 587; 21 *Am. and Eng. Ency.
Law*, 964, 975, 976; *Fisher* v. *McGirr*, 1 Gray (Mass.) 1; *Hib-
bard* v. *People*, 4 Mich. 125; *Sullivan* v. *City of Oneida*, 61 Ill.
242.    In *Weston* v. *Carr*, 71 Me. 356, it was held that when
no sufficient reason is given for longer delay, the time during
which an officer may keep intoxicating liquors seized without
a warrant, before making a complaint and procuring a war-
rant, should not exceed twenty-four hours.    This was so held
under a statute authorizing a seizure without warrant and a
holding for a reasonable time before making complaint and
procuring a warrant.    The case of *Deems* v. *Mayor and City
Council*, 80 Md. 164, marks the high water mark of constitu-
tional legislation authorizing the seizure and destruction of
private property, and the ordinance in that case was upheld
only from the manifest necessities of the case and to protect
the public health.    Even in that case it was not contended

that the impure milk could have have been seized and destroyed
except under authority conferred on the City Council by the
Act of 1894.   The case of *Lawton* v. *Steele*, 152 U. S. 135,
reviews the cases discussing the constitutonality of legislation
of this character.  All through this case, however, it is assumed
that an Act of the Legislature is necessary to justify the seiz-
ure of property of the kind and under the circumstances set
forth in the present case.

*Replevin the proper remedy for the plaintiff.*    If, then, the
seizure in this case by the Police Board was unauthorized, and
not with due process of law, the writ of replevin was the
proper remedy for the plaintiff to recover his property.
*Cobbey on Replevin*, sec. 313.

PAGE. J., delivered the opinion of the Court.

This is an action of replevin to recover a musical slot ma-
chine.    The third plea is, that the article is "a gambling device
or instrument intended and designed to be used by the plain-
tiff and others in violation of the gambling laws of the State,
which can be put to no legitimate use, and was detained by
the defendants, in the discharge of their official duty, to pre-
vent such violation and to be used, if necessary, as evidence
against the plaintiff;" and the replication is, that at the time
the machine was taken, "there was no charge pending against
the plaintiff for any violation of the gambling laws of this or
any other State; that the plaintiff was not arrested, nor has
since been arrested nor any warrant issued for his arrest on
any such charge, nor has any such charge been preferred
against him ; and that the said machine was not taken and
retained by the defendants for use as evidence against any
other person." To this replication the defendants demurred,
which being overruled this appeal was taken.   The effect of
the demurrer is to admit.

1st. That the musical slot machine is a gambling device
"intended and designed to be used by the plaintiff and others
in violation of the gambling laws of the State."

2nd. That it can be put to no legitimate use.

3rd. That it is detained by the appellants in the discharge of their official duty to prevent such violation of the gambling laws of the State, and,

4th. That such machine was taken at a time when there was no charge pending against the appellee for a violation of the gambling laws of this or any other State, nor any warrant issued for his arrest, nor any charge preferred against him."

The contentions of the respective parties turn upon the question whether a machine of that character, seized summarily by a police officer, can be recovered in an action of replevin. The appellant contends that inasmuch as it is admitted by the demurrer that it is an instrument incapable of being put to any legitimate use and was designed to be used by the appellee and others for violating the gambling laws of the State, it is an instrument *malum in se*, hurtful in character to the public peace and morals, and as such is subject to summary seizure and detention under the police power of the State, and therefore the action will not lie.

It is fully sustained by the decisions in this Court that the State has power to pass such laws as are necessary to protect the health, morals or peace of society ; and where the summary seizure, or even the destruction, of the offending thing is necessary for the public safety, may authorize that to be done, and such laws are not incompatible with those constitional limitations which declare that no person shall be deprived of his property "without due process of law." *Deems* v. *M. & C. C. of Balto.*, 80 Md. 173; *Mugler* v. *Kansas*, 123 U. S. 62. If therefore this principle must be assumed without further question, it is clear that if the Police Commissioners have been invested by the State with power to make seizures of property for the purpose of preventing crime, such authority can be amply sustained under the police power of the State, and its proper exercise would not be obnoxious to the constitutional provision against seizing property without due process of law. The question here confronting us therefore, is not a constitutional question, but one which depends upon the authority which the State has conferred upon

the Police Commissioners.    By the 744th section of the Charter of Baltimore City (ch. 123, Acts of 1898), the duties of the Board of Police Commissioners are defined:   It is made their duty "at all times of the day and night," to "preserve the public peace, prevent crime, and arrest offenders, protect the right of persons and property, guard the public health * * prevent and remove nuisances * * see that all laws regarding pawnbrokers, gambling, intemperance, &c., are enforced, &c.   An examination of the entire section will show that these and many other  duties are imposed on them for the purpose of preventing the perpetration of acts which are prejudicial to the peace, order, comfort and health of the public.  Prevention of acts prejudicial to the general welfare is in fact their chief obligation.    They must preserve order, protect the rights of persons and property, and prevent nuisances and crimes, &c.   By what means they are to prevent crime is not defined ; but it is clear that in exercising such a power, they must act in accordance with well-established rules of persons and  property, so that the rights of the citizens shall  not be invaded under the pretence of protecting them.   Subject to these limitations, they are charged with  the duty of acting intelligently, astutely and industriously in  preventing every infraction of the law  that would  result in destroying or injuriously affecting  the peace of society, or in the commission of crime.

In the case at bar the property seized, under the concessions of the demurrer, is an instrument "intended and designed to be used by the plaintiff and others in violation of the gambling laws," and one of such a character that "it can be put to no legitimate use. "    It does not therefore belong to the class of articles that  may or may not be used for legal purposes.   If it did, the presumption could not be made that the owner intended  it for illegal purposes ; and however the law may be, otherwise it is clear upon principle and authority that no seizure can be made, as a preventive measure, without it had first been  properly established that the article was procured and held for an illegal purpose.   But if the article be of such a

nature as to be incapable of being used for legal purposes, the presumption as a matter of fact would be that, being an unlawful article, that it was intended for such uses only as it was capable of being put to ; and in that event the appellee, to rescue himself from the charge of having in his possession an evil chattel, would be forced to show that he did not intend to use it at all, but was keeping it for some innocent purpose ; as a curiosity for instance. In *Commonwealth* v. *Coffee*, 9 Gray, 140, where a person was indicted for the larceny of brandy in Massachusetts, where liquor could not be legally sold, it was contended that having been bought to sell again, it was not the subject of larceny ; the Court held that, notwithstanding it could not be legally sold, it was property, because it did not appear "that it was procured and held for an illegal purpose." In that case the owner did not forfeit his right to the property, because he held possession of the liquor, but because the illegal purpose of the possession had not been determined in the method the law pointed out. In the case at bar there can be no such difficulty, because by the demurrer, it is admitted the machine was held for an illegal purpose and could not have been used for any other. *Monty* v. *Arneson*, 25 Iowa, 383. So in *State* v. *May*, 20 Iowa, 308, a person was indicted for stealing liquor ; the defense was the sale of liquors was prohibited ; but the Court decided it was property that could be the subject of larceny, because "it may at any time be withdrawn as an article of trade, and be kept exclusively for private use."

There are, however, "certain instances" in which "the law refuses its full protection to property because of its hurtful character and on strict grounds of public policy." Thus, a burglar's or gambler's tools, or counterfeit money, may be seized and confiscated under appropriate Acts. 2 *Schouler on Pers. Property*, sec. 24. It is difficult to perceive any sufficient reason for the denial of this principle. Why should a person be left in the possession of counterfeit money ? To what use could it be applied except an illegal use ? If, on its seizure, the owner could show that it was not his *bona fide* intention to

make any use of it at all, but was only keeping it as a memento or as a curious object, perhaps another case would be presented; but until that is made clearly apparent, it would have to be presumed that he intended to use it for the illegal purpose for which it was created and for which it was only adapted. So in the case at bar, no legal use can be made of the machine and it would seem to follow, in the absence of proof to the contrary, that the appellee intended to put it to the illegal uses for which it was constructed and for which alone it was capable of being used. And this would be so even if it were not admitted, as it is here, that its intended use was in violating the gambling laws of the State. What more effectual means for preventing crime than to deprive the thief or the burglar of the instruments of his evil trade? If, at midnight, a policeman find a person on the streets laden with burglar's tools hidden on his person, is he to permit him to go his way with his illegal burden? Is not the seizure of these instruments of crime a proper and reasonable thing for him to do? Would it not be conducive to the prevention of crime for the police officer charged with the enforcement of the law, and the prevention of crime, to do that? Must the owner be allowed to retain them until it can be shown that he has already made an illegal use of them or intends so to use them? So, also, as to a slot machine, conceded in this case, to be incapable of being used for legal purposes, it is a most effective manner of preventing its use, to seize it as "outlawed" property. The duty to prevent crime carries with it in such a case the power to summarily seize the offending article. It would be anomalous to hold that the Legislature in imposing on the policeman an obligation to prevent crime, intended to deny him one of the most effective means of performing such obligation. The power of the Legislature to confer this authority, under the police power, cannot be questioned. If it can properly confer upon a milk inspector power to destroy milk summarily, as in *Deem's case, supra*, it may for the same reasons, authorize the summary seizure and destruction of the tools and implements of crime.

We have been cited to no case where these principles have been denied. Those relied upon by the appellee, some of which have already been adverted to, are not in conflict with them. Those are cases where the article seized may be put to legal as well as illegal uses, and until it has been shown before the proper tribunal that it was designed to be put, or has been put, to an illegal use, it cannot be seized as a preventive measure. But that is not the case at bar, because we here have it admitted, not only that the slot machine cannot be used for a legal purpose, but that the appellee intended to use it for illegal purposes. The subject has been learnedly and exhaustively discussed by JUDGE REDFIELD in the case of *Spalding* v. *Preston*, 21 Vermont, 10, in which the Court sustained the view we have presented. That was an action of trover for certain counterfeit coin taken from a person who was afterwards indicted. The coin was claimed by a third person without, however, accounting "for the unfortunate guise" in which it was presented. REDFIELD, J., delivering the opinion of the Court, said, if trover under these circumstances can be maintained, then trespass would also lie for the taking of the property. Further, that the right of the sheriff to seize rests "upon grounds of preventive justice, aside of any statute whatever upon the subject;" and that the right to detain the base metal might be rested on two grounds: 1st, for evidence, and 2nd because, "Courts of Justice will not sustain actions in regard to contracts, or *property* which have for their object the violation of law—such property is 'outlawed.' " And again, in *State* v. *O'Neil*, 58 Vermont, 163, where the Court said, "that articles or instrumentalities once impressed with the characteristics of adaptation and intended use for purposes prohibited by law and contrary to public peace, health or morals, are subject to summary seizure under statutory or even general police regulations."

In *Bales* v. *State*, 3 W. Va. 687, the Court while holding that poker chips might be the subject of larceny, said that "they could not have been recovered by action is clear on the general principle that no Court would lend its aid to the guilty

keeper or owner to recover his illegal articles." This case is not cited as being approved in all respects by this Court, but merely as sustaining the position that in a case like the present one the action of replevin will not lie. *Eichenlaub* v. *City of St. Joseph*, 113 Mo. 395, (21 S. W. 8). For these reasons the judgment must be reversed.

*Judgment reversed and cause remanded for new trial.*

(Decided March 8th, 1901.)