### 76. ROBERTSON *v.* PORTER.

1. The courts will not lend their aid to a suitor seeking to regain possession of implements of crime, designed for no other purpose than the violation of law or the injuring of the morals of the people.
2. An action in trover will not lie against a sheriff in favor of the keeping of a gaming-house as to articles which were seized while being used in the operation of the gaming-house, or while being kept for that purpose, and which are adaptable only to the purpose of such illegal and immoral occupation.

Trover, from city court of Macon—John R. L. Smith, judge pro hac vice. July 11, 1906.

Argued February 7,—Decided February 16, 1907.

*Walter J. Grace, John P. Ross, Claud Estes,* for plaintiff in error. *Nottingham & McClellan,* contra.

POWELL, J. Trover and bail was brought by Porter against Robertson, the sheriff of Bibb county, for the recovery of the possession of the following articles: "1 large oak table with carved legs, worth $145; 1 roulette wheel with complete appliances, worth $400; 1 book-maker's wheel, worth $150; 1 large walnut table, worth $60; 1 long oak table with rounded corners, worth $90; 1 round oak table, worth $25; 5,000 composition discs or chips, worth $175; 1 cribbage or faro layout, $25; 1 glass layout for book-maker's wheel, worth $40; 1 long pine table, worth $12; 1 lot playing-cards, worth $10; and 1 lot dice, worth $5." The defendant answered, and, without admitting plaintiff's ownership of the articles sued for, and after denying his right to the possession of said articles and to the recovery of the same, set up the following allegations as a defense to the action brought: "6. And for further answer to said petition, defendant shows that the personalty described in said petition was manufactured and sold for the purpose of being used in the maintenance of a gaming-house and room, where persons would come together and

play and bet for money and other valuable things at games and devices for the hazarding of money and other things of value, in the playing of which games and operating said devices said personalty was to be used. And much of said personalty, to wit, one roulette wheel and appliances, one book-maker's wheel, one cribbage or faro layout, and one glass layout for book-maker's wheel, could not be used, and is unfit to be used for any other purpose than gaming purposes aforesaid. And defendant shows that at the time he took possession of said personalty, as hereinafter set forth, all of said personalty was being used in the maintenance of a gaming-house and room in said county of Bibb, where persons were permitted, with the knowledge of the person maintaining said gaming-house and room, to come together and play for money and other valuable things at games and devices for the hazarding of money and other things of value; and said personalty was used in the playing and operating of said games and devices for the hazarding of money and other things of value, and the said personalty had been so used in the maintenance of said gaming-house and room and the operating of games and devices for the hazarding of money and other things of value, as aforesaid, continuously for a long time next preceding the date on which said personalty was seized by this defendant, as hereinafter stated. And defendant shows that said personalty was being used, as aforesaid, in the maintenance of. a nuisance which tended to corrupt the public morals, which said nuisance was being maintained by and with the use of said personalty at the time said personalty was seized by defendant, and had been so used for a long time immediately preceding its seizure.

"7. And for further answer defendant shows, that while said personalty was being used in the maintenance of a gaming-house and room, and in the maintenance of a nuisance tending to corrupt the public morals, as alleged in the foregoing paragraph of this answer, it came to the knowledge of defendant that said personalty was being so used, and defendant being then, as now, the sheriff of Bibb county, Georgia, seized and took possession of said personalty in the discharge of his duty as sheriff of said Bibb county, for the purpose of preventing the further unlawful maintenance of the gaming-house and room, and for the purpose of abating the nuisance aforesaid. And defendant shows that said

personalty was absolutely necessary to the maintenance of said gaming-house and room and said nuisance, and that the seizure of said personalty and holding possession thereof, or destroying it, was necessary to prevent the further unlawful use of said property in the maintenance of a gaming-room and house and in order to abate the aforesaid nuisance which was being maintained by and with the use of said personalty, and was the only way in which defendant, as sheriff of Bibb county, could abate said gaming-room and house and nuisance. And defendant shows that by his seizure of said personalty and retaining possession thereof (all of which he did and has done in the discharge of his duty as sheriff of said Bibb county) he did abate said gaming-house and room and said nuisance, to the maintenance of which gaming-house and nuisance said personalty was then and there being used. And defendant shows that the destruction of said personalty or the retention of its possession by defendant and his successors in office is necessary to the continued abatement of said gaming-house and nuisance, and that the recovery of said personalty by the plaintiff would enable plaintiff to re-establish, re-erect, and continue the aforesaid gaming-house and nuisance, by and with the use of said personalty, or enable said plaintiff to erect and maintain a like gaming-house, and nuisance within the State of Georgia, contrary to the laws of said State, the good order, peace and dignity thereof.

"8. And for further answer defendant shows that when he seized said personalty as aforesaid, it was being used in the violation of the criminal laws of the State of Georgia, in the maintenance of a gaming-house and room and in the maintenance of a nuisance which tended to corrupt and did corrupt the public morals; and the recovery of said property is sought by the plaintiff so that said personalty may be used in the violation of the criminal laws of the State of Georgia, and in the maintenance of a nuisance tending to corrupt the public morals. Said personalty was manufactured for such purpose and use, and is unfit for any other purpose or use, and is not salable for any lawful use.

"9. And defendant shows that, by reason of all the facts hereinbefore alleged, the said plaintiff ought not to have and recover said personalty, and the courts of the State of Georgia ought not to lend their aid in the recovery of said personalty so that it may again be put to the illegal and immoral uses and purposes aforesaid

in which it was being used when seized and taken possession of by defendant as aforesaid, and for which illegal and immoral uses and purposes it was manufactured and sòld."

A demurrer was interposed by the plaintiff to defendant's answer and particularly to the paragraphs set forth above, in substance as follows: (1) Said answer shows no sufficient legal reason why plaintiff should not have and recover of defendant the property in dispute, in that the same sets up no sufficient facts which should defeat plaintiff's said right of recovery. (2) Specially demurring to paragraph 6 of said answer, plaintiff submits that said paragraph contains no such statement of fact as would defeat or tend to defeat plaintiff's said right of action or his right of recovery in said suit. (3) Further, that even though it be true that said personal property was manufactured, sold, and used for the purpose of gaming and conducting a gaming business, such state of facts affords no legal reason why defendant should seize and hold the same, and constitutes no valid legal reason why plaintiff should not have and recover the same of defendant. (4) That the same shows no such state of facts as in law would justify defendant, even though sheriff of said Bibb county, in seizing and withholding from plaintiff said property; and furnishes no legal reason why plaintiff should not have and recover same in said action. (5) That the same shows no legal authority for defendant, even though sheriff as aforesaid, warranting him to seize and withhold from plaintiff said property, and neither furnishes nor tends to furnish any legal reason why plaintiff should not have and recover the same. (6) That defendant, though he is and was sheriff of said county, had no authority of law for the abatement of any nuisance, even should the facts alleged by him constitute a nuisance within the intent and meaning of the law; and the facts alleged in said paragraph show no such legal authorization for him, even as sheriff, to abate any nuisance. (7) That the facts alleged therein do not and could not, within intendment of the law, constitute a nuisance; and afford no legal reason which could possibly defeat or tend to defeat plaintiff's recovery in said action. (8) That the facts alleged therein do not constitute a nuisance within the intent and meaning of the law, as contended by defendant. (9) That even did the alleged facts constitute a nuisance, defendant shows no such facts as authorized him to undertake of his own

motion such alleged abatement of an alleged nuisance; and they. afford no legal excuse for his conduct, even though he were acting as sheriff, as alleged by him, in the seizure and withholding the property of plaintiff.   (10) That the law provides a penalty for the conducting of a gaming-room; that no part of such penalty provides for the confiscation of property; and least of all does the law empower one individual, though he be sheriff, to adjudicate and enforce such confiscation, or forfeiture.   (11) That the method of abatement of nuisances, wherever any such exist, is specially provided for by law, but it is no part of such law that an individual, though holding the office of sheriff, shall both adjudge and execute the statute against nuisances.   (12) That defendant's contention that plaintiff had made an illegal use of said property, and would be enabled to do so upon its recovery, constitutes no legal reason why defendant should be allowed to withhold the same from his (plaintiff's) rightful ownership and possession.   (13) That though it were true that said property, when seized, was being used in violation of law, such fact will not justify defendant in withholding the same from plaintiff.   (14) That the facts therein alleged as constituting a nuisance do not amount to a nuisance, under the law; but that even were that true, defendant is not thereby justified in withholding said property, the law providing a very different method for abatement of nuisances.   (15) That defendant's contention that plaintiff's object in suing for said property is to use the same in violation of law is necessarily a conclusion and surmise upon defendant's part, and that no facts are by him alleged in support of said averment; and plaintiff submits that the same is insufficient in law.   (16) Further demurring to the statement as to plaintiff's object, contained in said 8th paragraph, plaintiff says that said statement is no legal reason even tending to show why plaintiff should not recover in said action.   (17) Further, plaintiff says that the law provides for the punishment of conducting a gaming-room; and it is no part of such penalty that property should be forfeited or confiscated by any individual or official.   (18) To paragraph 9 of said answer plaintiff demurs, and says that the same is insufficient in law, in that it is a mere conclusion of the pleader, without the statement of any facts, to the effect that plaintiff's object

in the recovery of said property is to violate the law; and is further insufficient in law even were the statements absolute facts.

The court sustained the demurrer as to these paragraphs and struck them; and to this judgment the defendant excepts. After hearing evidence as to the value and ownership of the property, the court directed a verdict for the plaintiff for the property in dispute and costs, the plaintiff electing to take a property verdict and waiving any claim for hire. To this judgment the defendant also excepts. We have intentionally set out the pleadings with fullness, that the contentions made by the parties and decided herein may the more clearly appear.

1. Courts are created for the upholding of the law and of morals, and will therefore decline to allow their processes used to further the maintenance of crimes and public evils. The law has the right of self-defense; it will not, by its own strong arm, assist in placing into the possession of any one instrumentalities designed for no other purpose than the breaking of the law. It will not protect the owner of a house devoted to lewd purposes, as to his rents (*Ralston* v. *Boady,* 20 *Ga.* 449); the mistress of a lewd house, as to her contracts with the inmates (*Postelle* v. *Rivers,* 112 *Ga.* 850); unlawful assemblages, as to their common fund (Regina v. Hunt, 8 Car. & P. 642); the milk dealer, as to his milk watered in violation of law (Deems v. Baltimore, 80 Md. 164); the "blind tiger" keeper, as to his liquors (State v. O'Neal, 58 Vt. 162); the indecent individual, as to his obscene prints and lascivious pictures; the gambler, as to his slot machine (Board of Police Commrs. v. Wagner, 52 L. R. A. 775), or as to his poker chips (Bales v. State, 3 W. Va. 687); the burglar, as to his kit, the counterfeiter, as to his molds and coins (Spalding v. Preston, 21 Vt. 9); the highwayman, as to his spoils (opinion of Lord Ellenborough, referred to on page 16 of case last cited); nor will it protect the keeper of a gaming-house, as to his paraphernalia and implements of crime (*Kneeland* v. *Connally,* 70 *Ga.* 424). This specific doctrine herein announced is not referable so directly to the legal maxim "ex dolo malo non oritur actio," which peculiarly relates to cases of contract, as to that great fundamental maxim of the law, "salus populi, suprema lex." We frankly concede the correctness of the criticism made by counsel for defendant in error, that in most of the cases cited above, so much of the

opinions as touch directly upon this question are obiter. However, these observations of learned judges, though they be stated merely in passing, are so well supported by good reasoning as to persuade us and to convince us.

2. Applying the principles stated above to the facts of the case at bar, we must reverse the judgment of the trial court. The allegations of the answer, which for the purpose of this investigation are of course to be taken as true, present the case of a keeper of a gaming-house seeking to regain from the sheriff the possession of criminal instrumentalities which were seized in a raid upon the gaming-house, which were used in its maintenance, and which have no other lawful use. The plaintiff, by his demurrer, is not entitled to challenge the legality of the raid, or of the methods by which the property was seized, or of the purposes for which it was being held. So long as he concedes, as he must do in order to demur, that the articles sought to be recovered are instrumentalities of crime, designed for that use and intended to be returned to that employment, the law will not hear him at all. To quote Lord Mansfield (Holman v. Johnson, 1 Cowp. 343), "No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff." From the opinion in the case of Spalding v. Preston, 21 Vt. 16, we quote the following extract, which may prove interesting in this connection: "A distinguished English judge, Lord Ellenborough, I think, once said, in the trial of an action in the king's bench, in regard to an illegal contract, that he would not condescend to sit, as an arbitrator, in regard to the division of spoil among highwaymen. What he would have said had one of the gang presumed to bring trover against the sheriff of London, for an unreasonable detention of the booty during the pendency of an indictment against an accomplice, it is difficult to conceive. If such a plaintiff got out of court without getting into Newgate, with his accomplices, he might esteem himself fortunate." In the case from which the above quotation is taken, the same being an action brought against

the sheriff for the recovery of certain disks of base metal intended for the making of counterfeit coin, the court, notwithstanding that by an inadvertent omission in the statute the law had made no provision for the seizure of such metal along with the apparatus of the counterfeiter, said: "We shall only mention two other grounds, upon which we think it impossible to maintain this action. (1) It was necessary to detain the base metal, as matter of evidence, against Russell. A mere description, either of the form or quality of the pieces, would be much less satisfactory than the inspection by the jury and witnesses upon the stand. (2) Courts of justice will not sustain actions in regard to contracts, or property, which have for their object the violation of law. If a gang of counterfeiters had quarreled about the division of their stock, or tools, a court of justice could hardly be expected to sit, as a divider among them. If one had taken the whole, in violation of the laws by which such associations subsist, a court of law could not interfere, because it is not presumed to be expert in such questions. And if it were, it is considered a public scandal that such matters should be there discussed or adjusted. Such property is, so to speak, outlawed, and is common plunder. One who sets himself deliberately at work to contravene the fundamental laws of civil governments, that is, the security of life, liberty, or property, forfeits his own right to protection, in those respects wherein he was studying to infringe the rights of others. The man who attempts the life or the liberty of another, forfeits, for the time, all right to the protection of his own life or person; and the person assailed may justly destroy both, if necessary, in his own defence, or if he may be fairly supposed to have esteemed it necessary, under the circumstances. So, too, if any member of the body politic, instead of putting his property to honest uses, convert it into an engine to injure the life, liberty, health, morals, peace, or property of others, he thereby forfeits all right to the protection of his bona fide interest in such property before it was put to that use. And he can, I apprehend, sustain no action against any one who withholds or destroys his property, with the bona fide intention of preventing injury to himself or others."

We learn from the argument of counsel, and from the copy of a bond appearing in the record, that upon the bail proceeding

being served upon the sheriff he refused to give bond for the property, and that the coroner who served the process thereupon allowed the plaintiff to take the property, upon his giving bond in the sum of $1,200. Counsel for the defendant in error, in his most forceful and interesting argument in this court, urges that fact as a reason why the demurrer should have been sustained, and makes the inquiry, "What will the sheriff do with the money, if he be given a judgment in the case and recover on the bond?" This question, we concede, is puzzling, but it is not before us for decision now. The sheriff is entitled to sustain his plea to protect himself from the costs, if for no other purpose. The demurrer to the answer raises purely questions of law, and these we have passed upon. It may be that the proof will show that some of the articles are not of such character as to render them essentially suitable only for unlawful purposes. If so, the sheriff should return them if they are not retained for the purposes of evidence; and as to such things the plaintiff might have judgment. But those things which are manufactured for gaming and are ordinarily kept only for that purpose, though they may sometimes be put to other incidental harmless uses, are obnoxious in the eyes of the law; and for the taking, damaging, or destroying of them, no cause of action will arise. Along with outlaws and alien enemies, they have been debarred of all judicial standing from most ancient times. *Judgment reversed.*