SHAW, P. J.
—This appeal is from a judgment in favor of defendant in a claim and delivery action brought to recover possession of $852.34 in cash, eight cashier’s cheeks for $50 each, and several packages of papers containing signatures of various individuals. Each cashier’s check was payable to a different person. All of the property described in the complaint was seized by police officers of the city of Long Beach when they arrested appellant and charged him with the crime of pool-selling in violation of subdivision 1 of section 337a of the Penal Code. This charge was subsequently dismissed.
The trial court found that appellant, at the time of his arrest, “was conducting a lottery” and that the personal property sought to be recovered in this action “was money and property offered for distribution by appellant as a lottery”. As conclusions of law the court found that the said property was subject to forfeiture to the state of California, and plaintiff was not entitled to recover it. Both the finding of fact and these conclusions of law must be sustained.
Appellant operated a so-called “chain letter store”, his plan of operation having been substantially as follows: His “customers” paid him the sum of $1.05 each, whereupon their names were placed upon a list in the order of payment, Five cents of each amount was retained by appellant for expenses and one dollar was retained in a fund or pool. When forty-nine others made similar payments the person making the first payment received fifty dollars, and thereafter when each customer’s name reached the top of the list he received a like sum. Appellant was permitted to pay in one dollar and to place his own name on the list about once for every twenty-five other names. The packages of papers containing signatures, which plaintiff seeks to recover, were no doubt the lists thus made up.
Before appellant’s arrest he had paid the sum of fifty dollars out of the pool to each of several persons. The cash *Supp. 762 and the cashier’s checks which are the subject of this action represented payments made to appellant by persons pursuant to the above-described plan. The fact that every person who participated in this scheme would not receive the full sum of fifty dollars, and that the amount to be received by each was dependent upon chance, is evident from the plan of operation, as well as from appellant’s testimony that “A pool cannot pay out indefinitely. No pool can go and pay out whatever they promise because all pools eventually break but they still retain an ownership or equity in the pool which they will receive eventually. ... Of course in operating a pool naturally the operators always have a certain amount of money or certain names to bank that pool in case of liquidation because all money taken in would be for liquidation whether it was ten cents on the dollar or a hundred cents on the dollar.” Appellant testified that he had been in the banking business for eighteen years and when asked whether he had calculated the chances of the people who paid money into the pool of ever getting their money back, he replied: “Yes, absolutely, I had it all fixed to get it back. They might not have gotten $50 but they would have gotten back money.’.’ He also stated that if the pool dissolved, “they would get what was left. . . . Perhaps whatever was left after defraying expenses.”
Section 319 of the Penal Code reads as follows: “A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift-enterprise, or by whatever name the same may be known.” The enterprise carried on by appellant contained all of the elements of a lottery as defined in that section. (See People v. Hecht, (1931) 119 Cal. App. (Supp.) 778 [3 Pac. (2d) 399].) (1)
The scheme was “for the disposal or distribution of property”, to wit, the money placed in the pool above described. (2) The money was distributed “by chance”. If and when a person’s name reached the top of the list he received fifty dollars, provided sufficient cash were in the pool to pay that amount. If there were a deficiency the pool would be liquidated and each person would receive less than fifty dollars, *Supp. 763 and appellant, as the operator of the pool, would receive a share by reason of the presence of his name on the list. (3) The distribution was to persons who had paid a “valuable consideration for the chance of obtaining such property”, or a share or an interest therein. (4) Each amount received by appellant was paid to him upon the “agreement, understanding, or expectation” that the fund was “to be distributed or disposed of by lot or chance”.
The dismissal of the criminal charge against appellant does not entitle him to maintain this action for a return of the property seized by the police at the time of his arrest. Even though he may not have been guilty of the crime of pool-selling with which he was charged, nevertheless the property was subject to forfeiture under section 325 of the Penal Code, which provides: “All moneys and property offered for sale- or distribution in violation of any of the provisions of this chapter are forfeited to the state, and may be recovered by information filed, or by any action brought by the attorney-general, or by any district attorney, in the name of the state. Upon the filing of the information or complaint, the clerk of the court, or if the suit be in a justice’s court, the justice, must issue an attachment against the property mentioned in the complaint or information, which attachment has the same force and effect against such property, and is issued in the same manner as attachments issued from the district courts in civil cases.” Plaintiff attacks this section as lacking in due process of law, but we do not regard it as deficient in that respect. It provides that the forfeited property may be recovered by an information filed or action brought and that in connection therewith an attachment “must” be issued against the property with the same force and effect given to attachments in civil cases. The mere provision for an information or action imports an adversary proceeding in which the owner or claimant of the property shall have notice and an opportunity to be heard before the forfeiture is established. In addition to this is the express requirement for an attachment of the property alleged to be forfeited. The attachment or other seizure of property in a judicial proceeding is in itself notice to the owner that the court has assumed control of the property. By virtue of such a seizure the proceeding becomes one in rem or quasi in rem, in which the court has jurisdiction to deal with and dispose of the property on substituted service of process, *Supp. 764 without actual notice to the owner. (Nichols v. Superior Court, (1934) 1 Cal. (2d) 589, 598, 599 [36 Pac. (2d) 380, 95 A. L. R 894]; Murray v. Murray, (1896) 115 Cal. 266, 276 [47 Pac. 37, 56 Am. St. Rep. 97, 37 L. R. A. 626] ; Blanc v. Paymaster M. Co., (1892) 95 Cal. 524, 530 [30 Pac. 765, 29 Am. St. Rep. 149] ; Herbert v. Bicknell, (1914) 233 U. S. 70, 74 [34 Sup. Ct. 562, 58 L. Ed. 854] ; Cole v. Cunningham, (1889) 133 U. S. 107, 116 [10 Sup. Ct. 269, 33 L. Ed. 538] ; Pennoyer v. Neff, (1877) 95 U. S. 714, 727 [24 L. Ed. 565].) Such substituted service, at least, is implicit in the provisions of section 325, and it provides due process of law as defined in People v. Broad, (1932) 216 Cal. 1, 7 [12 Pac. (2d) 941], on which plaintiff relies.
As already stated, the trial court found that all the property sued for was subject to forfeiture under section 325, and we find sufficient support in the • evidence for this finding. As to the cashier’s checks and the money, there is no room for question. It is readily inferable from the evidence that the cashier’s checks were for sums which had become due to the payees named therein under the operation of plaintiff’s plan and were being held by him for delivery to said payees, and that the cash was being held for like payments to unidentified persons, some of which perhaps had not yet accrued. While the other property was not directly offered as prizes, the testimony of plaintiff in regard to liquidation, part of which is above quoted, would bear the construction evidently put upon it by the trial court, that this property was to be disposed of on liquidation and its proceeds divided among the contributors. This would bring it also within the terms of section 325. But even if, as to this property, the finding were unsupported, the judgment in regard thereto would be right. This property is of trifling-value and was all used by plaintiff in the operation of his lottery; in fact, most of it is of doubtful utility for any other purpose.
The law does not favor one who either operates or patronizes a lottery, and in a great variety of cases it has been held that the courts will not aid such a person to enforce his supposed rights, although in a like situation they would be open to one engaged in an innocent business or transaction. (Pacific Debenture Co. v. Caldwell, (1905) 147 Cal. 106 [81 Pac. 314]; Collins v. Lean, (1885) 68 Cal. 284 [9 Pac. 173] ; 16 Cal. Jur. 716; 38 Cor. Jur. 319-323, and cases there cited.) *Supp. 765 See, also, Johnston v. Russell, (1869) 37 Cal. 670; Gridley v. Dorn, (1880) 57 Cal. 78 [40 Am. Rep. 110]; Takeuchi v. Schmuck, (1929) 206 Cal. 782, 787 [276 Pac. 345], where the same rule was applied to illegal transactions other than lotteries. More specifically, the court will not aid a party to recover property which has been used by him in violating the laws prohibiting lotteries, or which is designed for that purpose. (Lew U. Fon v. Chambers, (1924) 68 Cal. App. 244, 251 [228 Pac. 865] ; Collins v. Lean, supra.) The reasons for refusing the aid of the court become even stronger when the property, by reason of its illegal use, has incurred a forfeiture and is liable to proceedings by the state to ascertain and enforce that forfeiture. On both these grounds we think the decision of the trial court was right.
The judgment is affirmed, respondent to recover his costs of appeal.
Schauer, J., and Wilson, J., pro tern., concurred.