(June 6, 1907.)

J. B. MULLEN & COMPANY, Appellants, *v.* D. H. MOSE-LEY, Sheriff, Respondent.

[90 Pac. 986.]

REPLEVIN OF NUISANCE—ANTI-GAMBLING LAW—GAMBLING DEVICES—SLOT MACHINES—SUMMARY SEIZURE AND DESTRUCTION OF GAMBLING DEVICES—CONSTITUTIONALITY OF ANTI-GAMBLING LAW—POLICE POWER—DUE PROCESS OF LAW.

1. Replevin will not lie to recover gambling devices known as "slot machines," the same being incapable of use for any purpose

except in violation of the anti-gambling law. (Act Feb. 6, 1899; Sess. Laws 1899, p. 309.)

2. A litigant will not be heard in a court of justice to wage his action against an officer of the law over the right of possession of an instrument or device designed and intended only for use in the commission of crime.

3. The act of February 6, 1899, commonly known as the anti-gambling law, is not in conflict with section 13 of article 1 of the state constitution as depriving the citizen of his property without due process of law.

4. Section 4 of the anti-gambling act, which authorizes the summary seizure and destruction of gambling devices, is a constitutional and legitimate exercise of the police power of the state for the suppression and prevention of crime and the protection of the public morals and welfare of the state.

5. The police authorities of the state may be properly invested with power and authority to seize and destroy public nuisances and to seize such instruments and devices as are designed and intended for use in the commission of crime.

6. A "slot machine," incapable of use for any purpose except in violation of the penal provisions of the anti-gambling law, is not property within the meaning and protection of section 13, article 1 of the state constitution, which provides that "no person shall . . . . be deprived of life, liberty or property without due process of law."

7. The police power of the state extends to everything necessary or essential to the due and ample protection of the public morals and the maintenance of the peace and quiet of the state as well as to the protection of life and property, and in the exercise of that power the state may authorize its officers to summarily abate and destroy nuisances and those things specifically designed and prepared for the commission of crime.

8. Gambling itself was a nuisance at common law, and is a crime under the statutes of this state, and the machines, instruments and devices designed and intended for carrying on such nuisance and crime are themselves nuisances.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for the county of Ada. Hon. Geo. H. Stewart, Judge.

Action in replevin by the plaintiffs for the recovery of the possession of a number of "slot machines." Judgment for defendant and plaintiffs appealed. *Affirmed.*

Hawley, Puckett & Hawley, for Appellants.

The real and only material issue involved in this case is as to constitutionality of section 4847 of the Penal Code (1901), which, we contend, is contrary to section 13 of article 1 of the constitution, in that it does not provide for taking property by due process of law, or any process of law whatever; and even though it might be claimed from the reading of the section itself that it was the intention of the legislature that the justice issuing the warrant should destroy the property by due process of law, in this particular case we contend that the justice ordered the property destroyed without the process of law, and that the whole proceeding was *ex parte,* and that there was no notice of any kind given to the plaintiff of such action, and that the plaintiff never had his day in court, as shown by the answer itself. (*Ieck v. Anderson,* 57 Cal. 251, 40 Am. Rep. 115; *State v. Robbins,* 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438; *Chauvin v. Valton,* 8 Mont. 451, 3 L. R. A. 194, 20 Pac. 658; *Brown v. City of Denver,* 7 Colo. 305, 3 Pac. 455; *Stuart v. Palmer,* 74 N. Y. 183, 30 Am. Rep. 289; *Thomas v. Gaine,* 35 Mich. 155, 24 Am. Rep. 535; *Davidson v. New Orleans,* 96 U. S. 97, 24 L. ed. 616; *County of San Mateo v. Southern Pacific Ry. Co.,* 13 Fed. 722, 8 Saw. 238; *Colon v. Lisk,* 153 N. Y. 188, 60 Am. St. Rep. 609, 47 N. E. 302; *Lowry v. Rainwater,* 70 Mo. 152, 35 Am. Rep. 420.)

We do not think that there can be a case found anywhere in the reports wherein the courts of any state in the Union have held that a provision of this kind is constitutional, unless by the act itself it declares the property to be destroyed a nuisance.

The section of this act authorizing the issuance of the warrant cannot be sustained, for the reason that it authorizes the issuance of a warrant which is in effect a search-warrant, without probable cause supported by oath or affirmation, and is therefore directly in conflict with section 17, article 1, constitution of Idaho. (*Garland Novelty Co. v. State,* 71 Ark. 138, 71 S. W. 257.)

Chas. F. Koelsch and R. P. Quarles, for Respondent.

The stipulation of facts stipulates the appellants out of court. By their solemn admission these slot machines are instruments of crime, adapted only to unlawful uses. This shows them to be what the law regards as "outlawed" property, incapable of ownership by anyone, and such property as courts will not lend their aid to recover, especially from officers of the law whose duty it is to prevent and punish crime. Replevin will not lie in such case. (*Spaulding v. Preston*, 21 Vt. 10, 50 Am. Dec. 68; *Board of Police Commrs. v. Wagner*, 93 Md. 182, 86 Am. St. Rep. 423, 48 Atl. 455, 52 L. R. A. 775; *State v. Robbins*, 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438.)

The most effectual way of preventing crime is to seize the instruments by which that crime is committed and summarily destroy them, and state statutes authorizing such seizure do not conflict with the constitution. (*Lawton v. Steel*, 119 N. Y. 226, 16 Am. St. Rep. 813, 23 N. E. 878, 7 L. R. A. 134; S. C., 152 U. S. 133, 38 L. ed. 385, 14 Sup. Ct. Rep. 499; *Board etc. v. Wagner*, 93 Md. 182, 86 Am. St. Rep. 423, 48 Atl. 455, 52 L. R. A. 775; *Garland Novelty Co. v. State*, 71 Ark. 138, 71 S. W. 257; *State v. Soucie's Hotel*, 95 Me. 518, 50 Atl. 709; *Frost v. People*, 193 Ill. 635, 86 Am. St. Rep. 352, 61 N. E. 1054; *Furth v. State*, 72 Ark. 161, 78 S. W. 759; *Glennon v. Britton*, 155 Ill. 232, 40 N. E. 594; *Boble v. People*, 173 Ill. 19, 64 Am. St. Rep. 64, 50 N. E. 322; *Wagner v. Upshur*, 95 Md. 519, 52 Atl. 509, 93 Am. St. Rep. 412; *Bales v. State*, 3 W. Va. 687; *State v. O'Neil*, 58 Vt. 163, 56 Am. Rep. 557, 2 Atl. 586; *Deems v. City of Baltimore*, 80 Md. 173, 45 Am. St. Rep. 339, 26 L. R. A. 541; 25 Am. & Eng. Ency. of Law, 2d ed., 146.)

The statute under consideration is purely a police regulation adopted to protect the citizen in his property and to promote good morals.

AILSHIE, C. J.—This action was commenced by the plaintiffs to recover a number of "slot machines" from the defend-

ant, who was then sheriff of Ada county. The cause was determined in the district court on an agreed statement of facts, and judgment was entered against the plaintiffs and in favor of the defendant for his costs. The plaintiffs have appealed from the judgment. It is stipulated, among other things, as follows:

"That on or about the 23d day of March, 1905, plaintiff was and now is the owner of the following described personal property, to wit:

"Six (6) Mills' slot machines, numbered, 8,592, 6,171, 12,232, 8,392, 751 and 661, respectively, one (1) Wattling machine and two Gable slot machines of the value, if of any value at all, of one hundred and twenty-five ($125.00) dollars.

"That said defendant came into the possession of said property lawfully.

"That before the commencement of this action, to wit, on the 20th day of January, 1906, plaintiff demanded the possession of said property from the defendant, but to deliver the same, or any part thereof, defendant refused and still refuses, and withholds the possession thereof from the plaintiff, to his damage, if to his damage at all, in the sum of one ($1.00) dollar. . . . .

"That said property above described are gambling devices, and were devised, and are designed and constructed for the sole and only purpose of playing games of chance for money, and are not adapted to any other use, or for any other purpose; and are devised and adapted solely, entirely and only to the betting of money, at which money is lost or won, and are not capable, susceptible or fitted to be devoted or used in, or for any other purpose or purposes.

"That at the time said machines were originally seized by Constable A. Anderson, and for some days prior thereto, said machines were all being used for the sole purpose of playing games of chance at which money was bet, and won or lost, in Boise, Ada County, Idaho.

"That on the 22d day of October, 1904, information in writing and under oath, was presented to W. C. Dunbar, a

duly elected, qualified and acting Justice of the Peace in and for Boise Precinct No. 2, Ada County, Idaho, as such Justice of the Peace, that gambling devices, to wit, the slot machines mentioned and described herein, were within the City of Boise, Ada County, Idaho, and within the jurisdiction of said Justice of the Peace, and were then and there in operation, and used as such gambling devices, and particularly described said machines, and the places where the machines were then situate.

"That thereupon said Dunbar as and acting as such Justice of the Peace, thereafter issued warrants directed to the Sheriff or any Deputy Sheriff or Constable of said county, commanding that the said gambling devices, the said slot machines mentioned and described herein, and other slot machines, be seized and brought before him in his office in Boise, in said County and State, to be dealt with according to law, and thereafter placed the said warrants in the hands of A. Anderson, a duly elected, qualified and acting Constable of said precinct, who under and by virtue of said warrants seized said slot machines and brought the same before said Justice of the Peace to be dealt with as directed by the statutes in such case made and provided."

It is further stipulated that after the machines were brought before the justice of the peace, and after an inspection thereof by the justice and his ascertainment that they were gambling devices and designed for the purpose of playing games of chance, the justice made his order, commanding and directing that the machines be publicly destroyed; that prior to the destruction thereof an action was commenced in the district court for the recovery of the machines by the Mills Novelty Company against the justice of the peace, W. C. Dunbar, and that it was thereupon stipulated and agreed that during the pendency of the action in claim and delivery, the property should be delivered to and held by the sheriff of the county. The case of the Mills Novelty Company v. Dunbar was heard and determined in the district court, and thereafter upon appeal to the supreme court, 11 Idaho, 671,

83 Pac. 932, and the judgment was in favor of the defendant. Upon the determination of that case this action was commenced by these plaintiffs against the sheriff, claiming the specific articles herein enumerated. The order for the destruction of these machines was had in conformity with and under the provisions of sections 1 and 4 of the act approved February 6, 1899 (Sess. Laws 1899, 389), and known as the anti-gambling law. Those sections are as follows:

"Sec. 1. Every person who deals, plays or carries on, opens or causes to be opened, or who conducts, either as owner, employee, or lessee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, or any game played with cards, dice, or any other device, for money, checks, credit or any other representative of values, is guilty of a misdemeanor and is punishable by fine not less than two hundred dollars or imprisonment in the county jail not less than four months."

"Sec. 4. Whenever any judge or justice of the peace shall have knowledge or shall receive satisfactory information that there is any gambling table or gambling device, adopted or devised and designed for the purpose of playing any of the games of chance prohibited in section 1 of this Act, within his district or county, it shall be his duty to forthwith issue his warrant, directed to the sheriff or constable, to seize and bring before him such gambling table or other device, and cause the same to be publicly destroyed, by burning or otherwise."

The appellant attacks section 4 of this act on the ground that it is in violation of section 13, article 1 of the state constitution, which provides, among other things, that "no person shall . . . . be deprived of life, liberty or property without due process of law." Counsel for appellants insist that the summary seizure and destruction of property as provided for in section 4 of the act amounts to depriving him of his property "without due process of law."

Counsel for respondent urge, in the first place, that since appellants have stipulated and agreed that these "machines are gambling devices, designed and constructed for gambling

purposes and incapable of being used for any other purpose,''
they cannot, therefore, maintain their action in claim and de-
livery for the recovery of the same. In support of this con-
tention on the part of the respondent, he cites *Spaulding v.*
*Preston*, 21 Vt. 10, 50 Am. Dec. 68; *Board of Police Commrs.*
*v. Wagner*, 93 Md. 182, 86 Am. St. Rep. 423, 48 Atl. 455,
52 L. R. A. 775; *State v. Robbins*, 124 Ind. 308, 24 N. E.
978, 8 L. R. A. 438.

Without reviewing the authorities or going into any ex-
tended consideration of the reasons presented in support of
the principle they announce, we are content to hold that the
appellants cannot maintain their action in replevin or claim
and delivery for the recovery of articles that they admit are
devised and constructed solely and exclusively for gambling
purposes, and are only capable of use in violating the laws
of this state. This court will not countenance an action look-
ing to the recovery of such an article or articles. It is con-
ceded that the only possible value they can have is for use in
violating the penal statutes of this state; that in order to be
valuable and command any price in the market, it is neces-
sary that they be used in the commission of crime. The
courts of this state will not permit any person or number of
persons to maintain an action for injury to or recovery of an
article of such character. The plaintiffs, under such circum-
stances, have no standing in court. They have no grievance
to present to a court, and they will not be heard to cavil over
the right of possession of instruments of crime.

We are content to rest our decision in this case upon the
grounds above announced, but since the validity of this pro-
vision of the anti-gambling law has been argued in this case
and called in question in several other cases in this court, and
has never been passed upon, and in view of the further fact
that there is apparent laxity in the enforcement of this stat-
ute in some parts of the state—possibly growing out of a
doubt as to its validity—we are impelled to express the
opinion of the court in relation thereto.

The leading and perhaps most numerously cited authority
as to the validity of such a law is the case of *Lawton v.*

*Steele,* 152 U. S. 133, 38 L. ed. 385, 14 Sup. Ct. Rep. 499. This case was decided by the supreme court of New York (119 N. Y. 226, 16 Am. St. Rep. 813, 23 N. E. 878, 7 L. R. A. 134),and was taken to the supreme court of the United States on a writ of error. That case involved the validity of an act of the legislature of the state of New York, prohibiting the taking of fish from certain waters within that state, and also authorizing the summary seizure and destruction of any nets or other means or devices for taking and capturing fish in violation of the provisions of the act. The proper officers seized a number of fish nets and summarily destroyed them, and it was contended that this action amounted to taking property without due process of law, and was, in that respect, in violation of the "due process" clause of the constitution of the United States. The validity of the statute was upheld by the supreme court of New York, and the decision of that court was affirmed by the supreme court of the United States. The opinion of the latter court contains so much that is in point in the case at bar that we shall freely quote therefrom. In considering the power of the legislature to enact such a provision, the court says "The legislature undoubtedly possessed the power not only to prohibit fishing by nets in these waters, but to make it a criminal offense, and to take such measures as were reasonable and necessary to prevent such offenses in the future. It certainly could not do this more effectually than by destroying the means of the offense. If the nets were being used in a manner detrimental to the interests of the public, we think it was within the power of the legislature to declare them to be nuisances, and to authorize the officers of the state to abate them."

Again, in considering the question of the value of the property thus destroyed, the court says: "But where the property is of little value, and its use for the illegal purpose is clear, the legislature may declare it to be a nuisance, and subject to summary abatement. Instances of this are the power to kill diseased cattle; to pull down houses in the path of conflagrations; destruction of decayed fruit or fish or unwhole-

some meats, or infected clothing, obscene books or pictures, or instruments which can only be used for illegal purposes. . . . . It is not easy to draw the line between cases where property illegally used may be destroyed summarily and where judicial proceedings are necessary for its condemnation. If the property were of great value, as, for instance, if it were a vessel employed for smuggling or other illegal purposes, it would be putting a dangerous power in the hands of a custom officer to permit him to sell or destroy it as a public nuisance, and the owner would have good reason to complain of such act as depriving him of his property without due process of law. But where the property is of trifling value, and its destruction is necessary to effect the object of a certain statute, we think it is within the power of the legislature to order its summary abatement. For instance, if the legislature should prohibit the killing of fish by explosive shells and should order the cartridges so used to be destroyed, it would seem like belittling the dignity of the judiciary to require such destruction to be preceded by a solemn condemnation in a court of justice. The same remark might be made of cards, chips and dice of a gambling-room."

In answer to the contention that it vested the officers with power to summarily determine, without notice, the character of the article, and whether or not it was such an article as came within the inhibition of the statute, the court said: "Nor is the person whose property is seized under the act in question without his legal remedy. If, in fact, his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer seizing them, or, if they have been destroyed, may have his action for their value. In such cases, the burden would be upon the defendant to prove a justification under the statute."

After citing a number of cases in support of its opinion, the court distinguishes the cases of *Ieck v. Anderson,* 57 Cal. 251, 40 Am. Rep. 115; *Dunn v. Burleigh,* 62 Me. 24; *King v. Hayes,* 80 Me. 206, 13 Atl. 882; and criticises, as too restrictive and technical, the cases of *Lowry v. Rainwater,* 70

Mo. 152, 35 Am. Rep. 420; *State v. Robbins,* 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438; *Ridgway v. West,* 60 Ind. 371. *Chauvin v. Valton,* 8 Mont. 451, 20 Pac. 658, 3 L. R. A. 194, and *Brown v. City of Denver,* 7 Colo. 305, 3 Pac. 455, are not in point in the case at bar, owing to the widely different state of facts on which they rest. *Colon v. Lisk,* 153 N. Y. 188, 60 Am. St. Rep. 609, 47 N. E. 302, involved the seizure and condemnation of vessels unlawfully engaged in taking oysters and disturbing oyster-beds. The right of trial by jury before condemnation was there claimed, and it was also held that the method prescribed by statute did not furnish the owner with a remedy amounting to "due process of law." It should be borne in mind that fishing vessels are not *per se* unlawful or a nuisance or incapable of a lawful use. On the contrary, they are of considerable value, and are designed and constructed for lawful and legitimate purposes, and their employment for unlawful purposes is the exception rather than the rule. In that case, the court held that the act authorized an unreasonable and unnecessary exercise of the police power of the state; that neither the public morals, safety nor the peace and order of society required such an exercise of the police power.

We are aware that many courts have held legislative acts similar to the one under consideration unconstitutional and void, on the ground that they provide for taking property without due process of law. With the principles of law announced by those authorities we are in hearty accord, but to a statute like ours, we cannot accord these principles the application given in many of the cases. The uniform holdings of this court have been along the lines of a liberal construction in favor of a due and ample exercise of the police power of the state, looking to the protection of the public morals and the maintenance of peace and quiet as well as the protection of life and property. The determination of the means necessary to attain those ends primarily rest with the legislative department of the state government, and is always subject to the supervision and consideration of the courts established for that purpose.

In this case the articles or property seized, if they might be called such, are instruments of crime only. The most effectual method of preventing the crime is to destroy the specific instruments designed and kept for its perpetration. This is peculiar to the crime of gambling as to few other crimes. A man might commit murder with an implement of husbandry or the tool of an artisan, but for that reason the legislature would not be justified in directing the summary seizure and destruction of hoes and hammers, but it might with wisdom and propriety authorize the summary destruction of infernal machines. Under the police power of the state, we prohibit the herding of certain livestock within a specified distance of a dwelling-house; we kill diseased animals and quarantine against contagious and infectious diseases, and for the same reasons we destroy the devices and tools of the gambler that the morals of the community may be protected from his contagion and the peace and safety and prosperity thereof may not be invaded. Under the constitution, no man's property may be taken without due process of law, but when he invokes the protection of this constitutional provision, he must show that he is invoking it for the protection of something that is really property and falls within the meaning of that term. He is entitled to his day in court when his property rights are invaded, but this guaranty can scarcely be invoked where he seeks his day in court that he may dispute with the officers of the law the right of possession of instrumentalities, tools and machines contrived and designed as a ready means to be directed against society, and in violation of the laws of the land in the commission of crime. In such case there can be no doubt of the power of the legislature to authorize a summary seizure and destruction of such instrumentalities and devices.

It is generally difficult to detect and get hold of the players of unlawful and prohibited games on account of their alertness and ready means of locomotion, but the dumb instruments they leave behind for obvious reasons are always ready for business, and the law contemplates disabling them as a most effective way in which to prevent the recurrence of the

offense.   They are a menace to the welfare of the community, and invite breaches of the law.   The public authorities are required to destroy them for the same reason that they would destroy dies and plates for counterfeiting or the stills and vats of the moonshiner.

It has been urged by counsel for appellants that in order to authorize the destruction of these machines it was necessary for the legislature to declare them a nuisance.   The legislature has in effect done so.   It has prohibited their use in any manner or form, and has also directed that when any such instruments are found within this state, they shall be seized and destroyed.   Making their use a crime and rendering them incapable of any legitimate use, reduces them to the condition and state of a public nuisance which they clearly are.   This amounts as effectually to declaring them a nuisance as if the word "nuisance" itself had been used in the statute.

Gambling itself was a nuisance at common law and is in no better plight now that it has been specifically designated as a crime by our statute, and it therefore appears that the instruments and devices by and with which it is carried on must themselves be nuisances.   The following authorities sustain the validity of similar legislation: *Board of Police Commissioners of Baltimore v. Wagner,* 93 Md. 182, 86 Am. St. Rep. 423, 48 Atl. 455, 52 L. R. A. 775; *Garland Novelty Co. v. State,* 71 Ark. 138, 71 S. W. 257; *Furth v. State,* 72 Ark. 161, 78 S. W. 759; *State v. Soucie's Hotel,* 95 Me. 518, 50 Atl. 709; *Ex parte Keeler,* 45 S. C. 537, 55 Am. St. Rep. 785, 23 S. E. 865, 31 L. R. A. 678; *Glennon v. Britton,* 155 Ill. 232, 40 N. E. 595; *Bobel v. People,* 173 Ill. 19, 64 Am. St. Rep. 64, 50 N. E. 322; *Deems v. Baltimore,* 80 Md. 173, 45 Am. St. Rep. 339, 30 Atl. 648, 26 L. R. A. 541.

In 25 American and English Encyclopedia of Law, second edition, 146, the author of the text says: "Articles which are designed to be used in violation of the criminal law may be summarily seized by the police authorities under a statutory power to prevent crime; and the seizure of such articles is not taking of property without due process of law within the

constitutional inhibition. So articles or instruments impressed with the characteristics of adaptation, and intended and used for purposes prohibited by law and contrary to public health, peace, or morals, are subject to summary seizure under statutory or general police regulations.''

It has also been argued by counsel for appellants that the act is unconstitutional as being in violation of section 17 of article 1 of the constitution, which reads as follows: ''The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause, shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.''

That question cannot arise in this case, for the reason that it is admitted by the agreed statement that the sheriff came lawfully into the possession of these machines, and there is no contention that any unreasonable search or seizure was made. (*Garland Novelty Co. v. State,* 71 Ark. 138, 71 S. W. 257.) Section 5 of the act provides that the officer who shall have charge of the execution of any warrant issued under section 4 thereof shall have all powers granted in cases of search-warrants. Appellants contend that under the foregoing provision of the constitution no search-warrant can be issued except upon affidavit of probable cause. That may be true, and if so, the statute would still be read in connection with the constitutional provision, and the ''knowledge or . . . . satisfactory information'' which the justice or judge must possess before issuing his warrant would have to be received in the form of and be conveyed by affidavit. It will be observed that the statute does not, in terms, dispense with the affidavit. It should also be borne in mind that section 8 of the act makes it a misdemeanor for any ''county attorney, sheriff, constable or police officer'' to refuse or neglect to ''inform against . . . . persons whom they have reasonable cause to believe offenders against the provisions of this act.'' It therefore appears that the law makes it the official duty of certain officers to ''inform against'' offenders. The question would naturally arise as to whether the search of a

gambling-house or seizure of gambling devices would be ''unreasonable'' under the provisions of this section of the constitution.

For the reasons herein announced, the judgment of the trial court must be affirmed, and it is so ordered. Costs awarded in favor of the respondent.

Sullivan, J., concurs.