Matthias, J.
The demurrer to the petition presents squarely the questions:
First. Whether the authority to prescribe a standard of weights and measures is vested exclusively in the congress of the United States, and the legislatures of the several states are precluded from the exercise of any such power.
Second. Whether the condemnation and confiscation of measures which do not conform to a lawfully established standard in the manner au *94 thorized by Section 7965-1, General Code, is a violation of any provision of the state or federal constitution.
Plaintiffs contend that by reason of the provisions of Section 8 of Article I of the Constitution of the United States, which confers upon congress the “power * * * to coin money, regulate the value thereof, and of foreign coin, and fix the standard of weights and measures,” the state is entirely without authority to enact any laws upon that subject. It is to be noted that in the same section in which power is conferred upon congress to fix a standard of weights and measures authority is also granted to coin money and regulate its value. In Section 10 of Article I of the Federal Constitution it is provided that “No state shall * * * coin money,” but nowhere in the constitution is there any provision whatever precluding the state from legislating- on the subject of the standard of weights and measures. Such power is not prohibited by the constitution, and consequently under Article X of the Amendments is reserved to the states.
The authorities are uniform in holding that states are precluded from exercising a power onfy when the power over such subject is in express terms conferred exclusively upon the federal government, or where such grant of authority to the national government is attended by an express prohibition upon its exercise by the state or the exercise thereof by both would be clearly and necessarily contradictory and repugnant. It is quite apparent, therefore', that the power to adopt and *95 prescribe a standard of weights and measures was not conferred by the constitution exclusively upon the congress of the United States, and that it is within the power of the legislatures of the several states to enact laws fixing and regulating standards of weights and measures in all respects in which congress has not legislated upon the subject.
The case of Weaver v. Fegely & Bro., 29 Pa. St., 27, is a leading case upon the subject, and the rule there stated has been adopted and followed without exception. It is there held that “The mere grant in the federal constitution to Congress to regulate weights and measures does not extinguish the right in the states over the same subject, until Congress shall have exercised the power conferred.”
Upon this subject it is stated in Pomeroy on Constitutional Law (10 ed.), Section 410, that “While the power to coin money and regulate its value was thus given exclusively to Congress, the power to fix the standard of weights and measures was left in the hands of the states as well as of the general government. As long as this power remains dormant in the national legislature, the local commonwealths may fully exercise it.”
The power conferred upon congress by the constitution has never been exercised by it in any manner other than by the passage of a permissive statute. Until congress exercises the power conferred upon it and acts authoritatively, it is clear that the several states may for themselves, as indeed they have, adopt standards and regulate weights and measures. In so far as there has been *96 any legislation by congress this state has adopted the standards so fixed. In 1836, in pursuance of an act of congress, the secretary of the treasury furnished a standard half-bushel measure to the states, that being the standard in use by the government in its custom houses. Section 6414 of the General Code of Ohio is merely an adoption in form and dimensions of that standard half-bushel, measure for this state, and Section 6415, General Code, as amended March 12, 1913 (103 O. L., 139), of which the plaintiffs now complain, prescribes the dimensions and capacities of the peck and lesser measures, as to which there has been no legislation whatever, permissive or otherwise, by congress, and no authority has questioned the right of the states to act upon matters of this character in respects which have been in nowise covered by the acts of congress. As has been well stated, the provisions of our law of which complaint is now made merely prescribe, for the lesser measures named, the contour and dimensions essential to make them conform to the adopted standard half-bushel measure, so as to secure fairness and uniformity and also admit of the proper application of the heaping rule of measurement which is defined bjr Section 6416, General Code. In the absence of a statute regulating the contour and dimensions of a standard measure in addition to prescribing its cubic contents, the law requiring the heaping of certain articles of produce could readily be rendered ineffective by increasing the height and decreasing the diameter of such measure. It is clearly *97 within the rights and powers of the state to enact and enforce such regulatory statutes.
It is contended by plaintiffs that the provisions of Section 7965-1, which authorize the condemnation and confiscation of weights and measures or false or fraudulent measuring and weighing devices, are violative of the due-process clause of both the state and federal constitutions, and the question is presented whether the enactment and enforcement of such provisions are a valid exercise of the police power of the state.
It has been held by this court in the case of The State v. French, 71 Ohio St., 186, that the legislature may provide for the protection of fish, and to that end may declare nets set or used contrary to law a public nuisance and that they may be destroyed by wardens and other executive officers, and Section 6968-2, Revised Statutes, as amended April 26, 1898 (93 O. L., 303), is not in that respect unconstitutional on the ground that it deprives the citizen of his property without due process of law. The judge delivering the opinion quotes approvingly from Lawton v. Steele, 152 U. S., 133: “To justify the state in thus interposing its authority in behalf of the public, it must appear, first that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.” The court in applying the test held that the value of the property was a very proper matter *98 for consideration. The case of The State v. French was distinguished from that of Edson et al. v. Crangle et al., 62 Ohio St., 49, upon the ground that the statute considered in the former case did not declare the nets which did not conform to the standard prescribed a public nuisance to be summarily abated. We think a further distinction of this case from that of Edson et al. v. Crangle et al. may be found in the fact that these measures, if outlawed as measures, as they are, have in fact no value at all. Being false and fraudulent, measuring devices, they are of use only to deceive and defraud, and certainly there could be no value in an article of that nature such as to admit of any claim for reimbursement. Its use, in fact the only use to which it can be put, is made a crime.
In this connection we quote from Mullen et al. v. Mosely, 13 Idaho, 457, 12 L. R. A., N. S., 394: “The police authorities of the state may be properly invested with power and authority to seize and destroy public nuisances and to seize such instruments and devices as are designed and intended for use in the commission of crime. * * * The police power of the state extends to everything necessary or essential to the due and ample protection of the public morals and the maintenance of the peace and quiet of the state as well as to the protection of life and property, and in the exercise of that power the state may authorize its officers to summarily abate and destroy nuisances and those things specifically designed and prepared for the commission of crime.”
*99 In that case the court held that where property is of little value and is used for an illegal purpose the legislature may declare it a nuisance and direct its summary abatement. It may be contended that the distinction made between the cases of The State v. French, supra, and Edson et al. v. Crangle et al., supra, does not apply to the case at bar for the reason that the legislature has not expressly declared measures or measuring devices not in accordance with the standard prescribed to be public nuisances. We are constrained to adopt here the suggestion so aptly made by Judge Bigger in the decision on the demurrer to the original petition in this case: “That false weights are an abomination in the sight of the Lord we have the authority of the Holy Writ, and that false weights and measures were regarded as an abomination in the sight of men is evidenced by the fact that the use of such weights and measures was indictable at common law.” Certainly, a mere statement or declaration by the legislature would not and could not make more clear the fact that devices used and kept for use only for the purpose of deceiving and defrauding the public in market places are in and of themselves a public nuisance. The legislature has clearly so regarded them by making their use a crime and in recognizing them as being within the police power of the state and making them subject to summary condemnation and confiscation.
The necessity of regulation, such as provided by the statute under consideration, as well as an ample justification of the method of enforcement provided, is found in the language used by Justice *100 Day, speaking for the supreme court of the United States, in the case of Schmidinger v. Chicago, 226 U. S., 578, in which case the constitutionality of an ordinance prescribing the weight of loaves of bread made and sold in the city of Chicago was upheld:
“Furthermore, laws and ordinances of the character of the one here under consideration and tending to prevent frauds and requiring honest weights and measures in the sale of articles of general consumption, have long been considered lawful exertions of the police power. * * * This court has had frequent occasion to declare that there is no absolute freedom of contract. The exercise of the police power fixing weights and measures and standard sizes must necessarily limit the freedom of contract which would otherwise exist. Such limitations are constantly imposed upon the right to contract freely, because of restrictions upon that right deemed necessary in the interest of the general welfare.”
These regulations prescribing a standard of weights and measures would be of little practical benefit to the people, in whose interest they are enacted, without an adequate, prompt and efficacious method of enforcing the adoption and use thereof. The thoroughness and efficiency of the method of enforcement provided by Section 7965-1, and about to be applied by the defendants, is attested by the fact that plaintiffs complain only of the impending action under authority of such statute, there being no allegation in the petition that the defendants threaten or contemplate the institution *101 of a criminal prosecution under Section 13106 or 13109, General Code.
For the reasons heretofore stated the provisions of Section 7965-1 do not contravene either the state or federal constitution and are valid. It follows that the court of appeals properly sustained a demurrer to the amended petition, and such judgment is affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Wanamaicer, Newman and Jones, JJ., concur.