## No. 15,055.

### Approximately Fifty-nine Gambling Devices *v.* The People ex rel. Burke.
(130 P. [2d] 920)

Decided October 19, 1942.

Mr. Philip Hornbein, Mr. Theodore Epstein, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

This action was commenced below by petition of the district attorney of the Second Judicial District (City and County of Denver), as a proceeding in rem against "Approximately Fifty-nine Gambling Devices"—most of which were what is known in the trade as pinball machines—particularly requesting the court to issue a citation directed to the Wolf Sales Company, a corporation, and Al A. Roberts, also known as Al A. Reiwitz, its manager and treasurer, to appear before the court to show cause, if any there be, why said devices should not be adjudged to be gambling devices and ordered destroyed according to law. Al A. Roberts filed a special plea in bar in which he sets forth the facts that he had been arrested, tried and acquitted on the charge of having kept and used these same gambling devices "for the purpose of gambling, or playing at games of chance." To this plea in bar the district attorney filed a general demurrer which the trial court sustained. Evidence was introduced to sustain the allegations of the petition, at the conclusion of which, the court found that the machines involved were gambling devices, and ordered them destroyed by the proper officials as provided by law. The corporation seeks reversal on a writ of error.

At the time the machines were seized they were located at the business place of the Wolf Sales Company at 1624 Broadway, in Denver. Most of the machines were still in the original cartons as sent out by the manufacturer or distributor, but some of them had been set up for demonstration purposes. Among those seized were several slot machines, vending machines and a roulette wheel that had been taken in on trade.

The statute involved reads as follows: "It shall be the duty of all sheriffs, coroners, constables, police officers of cities, and other officers charged with executing the laws of this state, whenever it shall come to the knowledge of any such officer that any person has in his possession any cards, tables, checks, balls, wheels or gambling devices of any nature or kind, used or kept for the purpose of gambling or playing at any game of chance; or that any cards, tables, checks, balls, wheels or gambling devices used or kept for the purposes aforesaid may be found in any place, to seize and take such cards, tables, checks, balls, wheels or gambling devices, and convey the same before some judge or justice of the peace of the county in which the same may be found; and it shall be the duty of such judge or justice of the peace to inquire of such witnesses as he shall summon to appear before him in that behalf, touching the nature of such gambling devices, and if such judge or justice shall ascertain that the same are used or kept for the purpose of gambling or playing at any game or games of chance, it shall be his duty to destroy the same. It shall be lawful for officers in executing the duties imposed upon them by this section to break open doors for the purpose of obtaining possession of any such gambling devices; and all persons having possession of any of the articles aforesaid shall be conveyed before some judge or justice of the peace of the county in which they may be found, and held or committed for appearance at the next term of the district court to answer to any in-

dictment or information which may be preferred against them or any of them." '35 C.S.A., vol. 2, c. 48, §234.

Two propositions are urged for reversal, namely: 1. The court erred in sustaining the demurrer of the people to the plea in bar filed by plaintiff in error. 2. The court erred in adjudging that the devices involved in the case were owned and possessed in violation of law.

 1. The theory of the plea in bar is that the judgment of acquittal in the criminal case is res judicata as to the present proceeding. The plea of res judicata is not good because: (a) The same parties are not involved. The parties to the criminal case were the People and Roberts, the latter being charged with the crime. The parties to the instant case are the People, ex rel. Burke, district attorney and Approximately Fifty-nine Gambling Devices. While this distinction may seem superficial on a casual consideration, it is as real as it is apparent, because the action, when stripped of all legal technicalities, is an attempt on the part of the Wolf Sales Company to recover possession of certain specific personal property. Since replevin will not lie for recovery of the devices here involved (*Stanley-Thompson Co. v. People,* 63 Colo. 456, 168 Pac. 750), their recovery may not be had by the indirect method here attempted. (b) The evidence is not the same. The rule now in effect in Colorado is that a verdict of guilty or acquittal in a criminal case is not conclusive evidence on the same, or substantially the same, facts in a civil case, but is merely prima facie evidence of those facts, having the legal effect of shifting the burden of going forward with the evidence. *North River Ins. Co. v. Militello,* 100 Colo. 343, 67 P. (2d) 625. The district attorney had that burden here and made out his case. (c) The degree of proof required in the criminal case was higher than was required in this action in rem, the latter requiring proof by a fair preponderance of the evidence. (d) No constitutional right to a trial by jury is available in this kind of an action. *Kite v. People,* 32 Colo. 5, 74 Pac. 886.

We are not overlooking the case of *Coffey v. United States,* 116 U.S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684, but hold that this court is charged with the responsibility of the interpretation of the statutes of this state, and we have heretofore construed this statute on several occasions, particularly in the Kite and Stanley-Thompson Company cases, supra. The plea of res judicata must fail.

■ 2. The contention that the pinball devices had never been used for gambling purposes, while true in the instant case, does not defeat the state's right and power to destroy them. This is definitely settled in the Stanley-Thompson Company case, supra, wherein we said (p. 459):

"The keeping and use of these devices being prohibited by statute, they are a common nuisance. *Mullen v. Moseley, supra.* [13 Ida. 457, 90 Pac. 986, 12 L.R.A. (N.S.) 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450].

"Having in mind these principles, we are unable to agree with the contention that the seizure of such instruments was intended by the lawmakers only when they were in actual use. Since they are at all times a menace to society, not being capable of use except by violating the law, there is no reason why their abatement as a nuisance should be delayed until the law has been violated.

"We regard the words 'used or kept', not as describing the status of the devices as to use or otherwise at the time of seizure, but as descriptive of a class composed of things which are commonly used or kept for gambling.

"If an instrument falls within that class, it is subject to the statute."

■ An effort was made here to avoid the holding of the Stanley-Thompson case by showing that the "pinball" machines—most of the machines seized were of this class—were so constructed that a release of a simple gadget in the back of them would make it impossible

to play the machines for anything but amusement—a switch to turn the sin on or off, so to speak. But the flaw in this argument is that at the time the machines were seized and demonstrated in court they were set to function for gambling purposes. The test was not whether there was a possibility of their being used for amusement purposes, but their reasonably intended use and their inherent tendency to stimulate the gambling instinct latent in many people. These pinball machines are gambling devices, and held to be so by a majority of courts. See, 135 A.L.R. 149, *Walker v. Begole*, 99 Colo. 471, 63 P. (2d) 1224.

On the trial, counsel for Roberts and the corporation sought to show that similar machines have been licensed by the City of Colorado Springs, and that, therefore, their use must be legal and the state may not destroy them. Whatever may be the situation there and in other cities or towns, it will be time for the courts to consider the facts and circumstances surrounding such devices when cases arise involving them.

Finally, counsel for plaintiffs in error rely on the case of *Everhart v. People,* 54 Colo. 272, 130 Pac. 1076. That case, also, was a criminal prosecution for possession of gambling devices, and the conviction was sustained by this court. The case involved a different statute and is not authority in the case before us.

In the comparatively recent case of *Walker v. Begole, supra,* we affirmed a judgment sustaining a demurrer to a complaint in injunction against the enforcement of the statute involved here, and that case involved pinball machines similar to those in the case at bar.

Under the law in the last analysis here, the issue of whether these machines were kept for gambling purposes became a question of fact to be determined by the trial court. The machines were in the court room and their mechanical operation was demonstrated to the trial court. Police officers of the city, who from years of experience knew of the operation and use of similar

machines, were present and explained how the machines seized could be used for gambling. As already mentioned, they were set to so operate when seized. We think the record supports the court's finding and the judgment should be affirmed.

It is so ordered.

MR. JUSTICE KNOUS and MR. JUSTICE HILLIARD not participating.