Robert Weis and Greater Chicago Lodge No. 3, Loyal Order of Moose, Appellees, v. James P. Allman, Superintendent of Police, City of Chicago et al., Appellants.

Gen. No. 43,213.

Heard in the second division of this court for the first district at the October term, 1944. Opinion filed April 2, 1945. Released for publication April 17, 1945.

Barnet Hodes, Corporation Counsel, for appellants; J. Herzl Segal and Sydney R. Drebin, Assistant Corporation Counsel, of counsel.

Putnam, Johnson, Alschuler & Ruddy, of Aurora, Leonard J. Grossman, and Lawrence E. Dowd, both

of Chicago, for appellees; CLARENCE J. RUDDY, of Aurora, and LEONARD J. GROSSMAN, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An action in detinue brought by Robert Weis and Greater Chicago Lodge No. 3, Loyal Order of Moose, incorporated not for profit, for the return of nine "receptacles" and $500 in currency contained in the "receptacles," taken by the police of the City of Chicago from the premises of the corporation, hereinafter referred to as Chicago Lodge. The case was tried by the court without a jury and a judgment order was entered finding that Chicago Lodge was the owner of the nine receptacles and currency contained therein and ordering the City of Chicago, James P. Allman, Superintendent of Police of the City, and William Doubek, Custodian of the City, to return at once to Chicago Lodge and Robert Weis, its agent, the said chattels and the $500 in currency, and judgment for $2,500 was entered against the three defendants, to be discharged upon the immediate delivery by defendants to plaintiffs, at the premises of Chicago Lodge, of the nine receptacles and the $500. Defendants appeal.

The material facts are practically undisputed. On March 4, 1944, two police officers of the City of Chicago entered the premises of Chicago Lodge, located in the building at 130 North Wells street, Chicago, to investigate a complaint that there were slot machines in operation in the premises. A girl asked them for their membership cards. They told her that they were police officers, making an investigation, and they walked through a door marked, "Dining Room." James Traut, one of the police officers, testified: "There was a bar at one end of this room, and at the other end of the room there were several offices. In the middle of the room were several large posts. There were chairs around the bar, and around one of

these posts, alongside one of these posts, there was numerous slot machines, and against the wall there was nickel slot machines. . . . Mr. Pantelis [Assistant Corporation Counsel] : Describe the slot machine that required a nickel to be inserted. A. It is a metal receptacle, and it has a metal base. On the right hand side of the receptacle, there is a lever, coming out, and there is a small opening in which you insert a five cent piece, and you then pull the lever and as you pull the lever, there is five or six nickels showing in an open — . . . Q. Did you play this machine? A. I did. Q. All right, how did you play it? Describe the method you followed. A. I put a nickel in the slot. I then pulled the lever. As you put the nickel in the slot and pull the lever, there is five or six nickels showing in the glass, and these nickels move over, and the coin which you inserted is shown. There are three wheels which turn in one way and as these wheels turn, they come to a sudden stop, and there is a — cherries, lemons and oranges and bars and what not, on the first wheel, and there is the same on the second wheel, and the same on the third wheel. Q. Were there any coins returned, or any merchandise returned after you played one of these slot machines? A. No, there wasn't. Q. How many machines did you play? A. I played three machines. Q. And were they all nickel machines, or did you play any other kind of machines? A. Five cents and ten cents and twenty-five cent machines. Q. And you inserted the coin in each one the same way, through a hole in the metal container? A. That's right. Q. On your — pulled a lever, and the wheels spin around on each one of them? A. Yes. . . . State what they were. A. Slot machines. Q. And where are they — how are they played? For what purpose, if you know? Mr. Grossman [counsel for plaintiffs] : I object, if the Court please. The Court: Overruled, if he played it. A. You put in a coin, and if your certain numbers come up, more coins return than what

you put in. Mr. Pantelis: More than you put in? A. That's right. Q. And did you get any coins out of playing any of the three machines? Mr. Grossman: He has already answered that, Your Honor. Mr. Pantelis: I don't know whether he said anything about the three or not. The Court: I don't know whether he was lucky or not. A. No, I was not lucky. Mr. Pantelis: You weren't lucky. All right. Did you see any other persons playing the machines at that time? A. There was one person playing the machines. Q. Was he a police officer, or someone on the premises? A. I don't know who he was. Q. Was he a police officer? A. I don't know. Q. He wasn't with you? A. He wasn't with me. Mr. Pantelis: That's all." Upon cross-examination the witness stated that after playing the machines he noticed that there were several cards on the wall above the machines; that he had no search warrant and was not asked by anybody if he had, until after he arrested Weis, when he was asked if he had a warrant and he stated that he had not. The officer further testified that he had the machines taken from the premises and delivered to the custodian of the department of police; that the machines had money in them; that he put coins in the machines, and found out that they were in operation; that he saw a sign on one of the doors that said, "for members only." William J. Sullivan testified that he was a police officer of the City of Chicago and that he visited the premises with Officer Traut; that when he entered the place where the slot machines were "there was one man playing the slot machines;" that he, the witness, played one machine; that there were eight slot machines in all, and another machine that is known as "Jumbo Parade;" that he played a five cent slot machine; that it was "just a regular slot machine, you drop the coin, five cents or ten cents, or whatever it is, you drop the coin, and you pull the lever . . . and if you are lucky, you get a few nickels;" that he saw Officer Traut playing the machines; that he took possession of the machines,

called the wagon and took them down to the police station; that all of the machines "were slot machines." Upon cross-examination he stated that his testimony would be practically the same as Officer Traut's about the cards and about the sign "for members only;" that there was no sign upon the door through which they entered the place where the machines were; that they went to the premises "to investigate a complaint that there was slot machines in operation." Counsel for the City stated that if there was any doubt in the court's mind as to whether the nine machines taken were slot machines the City would bring them in. In response to this offer counsel for plaintiffs stated that the question before the trial court was not whether the machines were in form slot machines, but the use to which they were put, and counsel argued that the card above each machine determined the question. Plaintiffs then offered in evidence one of the cards, which reads as follows:

"—Notice!—

"This Receptacle is the Property of the Greater Chicago Lodge No. 3, Inc., Loyal Order of Moose.

"This receptacle is placed here for one purpose only, to receive donations from the members of Greater Chicago Lodge No. 3, Inc., Loyal Order of Moose for the general and entertainment fund.
Please Do Not Donate Under Any Other Conception.
"If you are a visitor please refrain from donating or using this receptacle. Donations are received from members of this organization only — and only for the purpose specified.

"For Members Only

Who Wish to Donate to the General and Entertainment Fund

"By Direction: —<br>"The Board of Officers"

This card was the only evidence introduced by plaintiffs in rebuttal of the testimony of the two police officers. Counsel for plaintiffs made statements to the court as to the nature of Chicago Lodge, its splendid membership, its charitable works, and that the machines were merely "receptacles" "used by us as donation boxes for members only, and not for gambling." The trial court made inquiries of the counsel as to where the money went that was put into the machines, and the counsel stated that it went to the general charity fund of Chicago Lodge. Counsel for the City called the trial court's attention to the fact that the statements of counsel did not amount to evidence, but the trial court stated that the intent and purpose for which Chicago Lodge used the machines was "a governing circumstance;" that the organization was a great one, devoted to charity, and that the money that came from the machines was used for that purpose. Plaintiffs also introduced in evidence a certified copy of a draft order filed March 6, 1944, in the case of *People v. Robert Weis*, which recites that a motion to suppress evidence and for the return of all property unlawfully taken from defendant's custody, at 130 North Wells street, was made in that case, upon the ground that the search of the premises by police officers was without a search warrant and the seizure of the receptacles described by the police officers as slot machines and the $500 was an unlawful seizure. The certificate also recites that the motion to suppress came on to be heard before Judge Gibson E. Gorman, and that he entered an order that the property seized by the police officers and the arrest of Weis was without search warrant or without a warrant or process of law, "and the Court finds the fact to be that said search and seizure and arrest were unlawful and without search warrant or warrant of law. It Is Further Ordered that all of said evidence herein before referred to so obtained by the police officers, be and the same is

hereby suppressed;'' and it was further ordered that the information be quashed and defendant Weis discharged. In deciding the instant case, the trial court stated that the machines were not intended for gambling purposes; that the money that went into the machines was used for charity, and that the judgment he would enter would follow the judgment entered by Judge GORMAN. Defendants contend that the judgment entered by Judge GORMAN has no bearing upon the vital question involved in the instant proceeding, viz: Were the slot machines gambling machines? Judge GORMAN did not pass upon the character of the machines nor the purposes for which they were used, and his decision has no direct bearing upon the question before us. However, the fact that the defendant in that proceeding, Weis, saw fit to file a motion to suppress certain evidence, viz., the slot machines in question, certainly indicates that Weis then regarded the slot machines as gambling machines.

Section 2 of par. 342 of the Criminal Code (ch. 38, par. 342, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 37.272]) reads as follows:

"342.   Gambling   device   defined—Confiscation.] Sec. 2.   Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found.''

In *People v. One Pinball Machine*, 316 Ill. App. 161, the Appellate court of the Second District had before it a proceeding brought under Section 2.   The case involved an appeal from an order of the County court of Winnebago county ordering the destruction of a certain pinball machine as a gambling device.   The machine was seized without a search warrant in the

place of business of one Fox by deputy sheriffs after one of them had played it. The subject of gambling machines and prosecutions brought under Section 2 and statutes akin to it is treated exhaustively in the opinion. In referring to machines like the instant ones, the opinion states (pp. 171, 172):

''The old-fashioned slot machine, commonly called a 'One armed bandit,' paying coins directly in uncertain amounts at uncertain intervals, was a pioneer in this field. Prosecutions for operating them, and holdings that they are gambling devices resulted in continuous unstinted effort by the parties interested to invent something that would thwart the law.''

█ Defendants contend that the testimony of the two police officers as to the character of the machines seized is not contradicted by any competent evidence, that Section 2 makes the machines gambling devices and that the Supreme court of this State and the courts of other states have held that gambling machines are not lawful subjects of property which the law protects, and that, therefore, plaintiffs cannot maintain their action in detinue for the return of the machines. The contention is a meritorious one.

█ In *Frost v. People*, 193 Ill. 635, 640, the court adhered to its ruling in *Bobel v. People*, 173 Ill. 19, that Section 2 was not unconstitutional, and also held that Division 8 of the Criminal Code, that provides for searches and seizures of gaming apparatus or implements and that the thing seized shall. be burned or otherwise destroyed under the direction of the judge, justice or court, was not unconstitutional. The opinion states (pp. 640, 641): ''The legislature have determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, for-

feiture and destruction without violating any constitutional provision. (*Glennon v. Britton*, 155 Ill. 232.)"
(See, also, *People v. One Pinball Machine, supra*.)

In *Stanley-Thompson Co. v. People*, 63 Colo. 456, the court had before it a case where the plaintiff owned certain gambling devices which were stored and not in use. It was admitted that they were gambling devices. The trial court ordered the machines to be destroyed under a section of the Colorado statutes. The appeal was based upon a contention that the Colorado statute relating to gambling devices applied only to such devices as were "used or kept" for the purpose of gambling. The opinion states (pp. 458, 459):

"It is well settled that things which are capable of no use for lawful purposes, and it is established that these instruments are of that class, are not the subject of property. They cannot be recovered in replevin, nor will damages be given for their loss or injury. They are, as some courts have said, 'outlaws.' *Oviatt v. Pond*, 29 Conn. 479; *Spalding v. Preston*, 21 Vt. 9, 50 Am. Dec. 68; *Frost v. People*, 193 Ill. 635, 61 N. E. 1054, 86 Am. St. Rep. 352; *State v. Robbins*, 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438; *Mullen v. Moseley*, 13 Idaho 457, 90 Pac. 986, 12 L. R. A. (N. S.) 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450; *Miller v. C. & N. W. Ry. Co.*, 153 Wis. 431, 141 N. W. 263, 45 L. R. A. (N. S.) 334, Ann. Cas. 1914 D, 632.

"If an instrument can have no lawful use, it must be presumed, in the absence of evidence to the contrary, that an illegal use is intended. *Police Coms. v. Wagner*, 93 Md. 182, 48 Atl. 435, 52 L. R. A. 775, 86 Am. St. 423. Its very existence is an imminent danger to the social welfare: *State v. Soucies Hotel*, 95 Me. 518, 50 Atl. 709; and it may be seized under statutory authority, or even under general police regulations. *State v. O'Neil,* 58 Vt. 163, 2 Atl. 586; *Frost v. People, supra*.

"The keeping and use of these devices being prohibited by statute, they are a common nuisance. *Mullen v. Moseley, supra.*"

In *People v. One Pinball Machine, supra,* the alleged gambling machine was seized without a search warrant after one of the deputy sheriffs had played the machine. The court, after citing the rule laid down in *Frost v. People, supra,* passes upon the contention of the owner of the gambling machine that it was seized without a search warrant, and states (pp. 175, 176, 177):

"If there was anything illegal in the proceedings in the instant case it was in the seizure only. There was a trial on the question of the right of destruction under a petition and answer. The machine demonstrated its character as a gambling device in the presence of the officer who seized it. It is the settled law that where an offense is committed in the presence of an officer, he has authority to make an arrest without a warrant. (*People v. Caruso,* 339 Ill. 258.) If the right of arrest exists, the right of search and seizure is incidental thereto. (*People v. Davies,* 354 Ill. 168; *People v. Macklin,* 353 Ill. 64; *People v. Roberta,* 352 Ill. 189.) The machine being a gambling device under section 2, the right to arrest the possessor existed under section 1. We know of no reason why an omission to make an arrest in such a case would deprive the officer of the right to seize the contraband machine by which an offense was committed in his presence. One reason for upholding the right of seizure alone is that the possessor might escape before the officer could make the arrest. Another is that if the officer was obliged to first procure a search warrant, the contraband article, during his absence on that mission, might be removed from the premises and concealed, and the warrant, being effective only as to the particular premises, would be wholly ineffective. Furthermore, the right to summarily seize and destroy

contraband articles, and to seize and sell articles not inherently illegal when unlawfully employed, without process or judicial proceedings, has been upheld in a number of jurisdictions. Fishing nets maintained in State waters in violation of the law may be seized and destroyed, *Lawton v. Steele,* 152 U. S. 133, 38 L. Ed. 385; fish baskets likewise used may be seized and destroyed, *Weller v. Snover,* 42 N. J. Law (13 Vroom) 341, automobile used for illegal transportation of liquor may be condemned and forfeited, *State v. Lee,* 113 Kan. 462, 215 Pac. 299; *State v. 1920 Studebaker Touring Car,* 120 Ore. 254, 251 Pac. 701; *Keeter v. State ex rel. Saye,* 82 Okla. 89, 198 Pac. 866.

"In *Glennon v. Britton,* 155 Ill. 232 at page 245, the Supreme Court of this State said: 'Under the various acts of Congress goods and things are seized, condemned and destroyed without service of process on the owner, other than seizure of the goods and arrest of the person in whose possession they are found, and that such statutes, and proceedings under them, are regarded constitutional and valid has been determined in many adjudicated cases in the Federal courts.'

"The seizure of property employed as a gambling device in violation of a statute is a proceeding *in rem,* and being contraband, the provisions of the Constitution relating to trial by jury and depriving one of his liberty or property without due process of law are inapplicable. (*Cambria v. Bachmann,* 93 W. Va. 463, 118 S. E. 336.) To the same effect is *Mullen & Co. v. Moseley,* 13 Idaho 457, 90 Pac. 986, 12 L. R. A. (N. S.) 394."

██ Plaintiffs contend that a slot machine is not *per se* a gambling device, that defendants failed to prove that the machines were gambling machines and the trial court was justified in holding that the machines were mere donation receptacles. Plaintiffs assume that in passing upon this contention we should

consider *statements* made by lawyers to the trial court that the machines were used only as donation boxes, that the money placed in the machines by the members of the lodge was intended as donations, to be used solely for charity, and that the players knew that they would never receive any returns. Indeed, the defense was practically predicated upon statements of counsel that had no basis in the evidence. In this court counsel for plaintiffs make an additional statement, viz., that the machines were so adjusted that they would pay no return to the player, and in support of this statement they argue that as the police officers received no returns when they played the machines we must assume that the machines were so adjusted that they paid no returns. Counsel add: "The officers did not get their money back—of course not, any more than they would if they had placed their money upon a tambourine of the Salvation Army, or a collection box in church on Sunday." In response to these statements defendants make the following pertinent inquiry: If the slot machines were intended as mere receptacles to receive donations, why was it necessary for Chicago Lodge to invest $5,000 in the purchase of *nine* slot machines? It certainly places quite a strain upon one's credulity to picture the members of this lodge going through the motions necessary to play these nine slot machines when they knew that the machines never paid any returns and that they were, in fact, the same as "a collection box in church on Sunday." A person plays a slot machine because he is willing to take a chance that there may be a return. Plaintiffs contend that the language on the cards above the machines shows conclusively the use the lodge made of the machines. If this argument is carried to its logical conclusion then a keeper of a gambling house might protect himself from prosecution by placing a sign upon his door that no gambling would be permitted upon the premises. It will

be noted that the cards did not state that the machines never returned any money to the player. Defendants offered to bring the machines into the court room if the trial judge had any question as to the nature of the machines' character. Plaintiffs did not ask that the machines be brought into court, nor did they offer any evidence to show that the machines never returned any money to the players. At the close of the case counsel for plaintiffs made the following significant statement to the trial court: "We have a market for these machines. It is our desire to buy a club house—we would like to dispose of those machines. If we get them, we will put them on a truck and take them immediately out of town—we wouldn't hold them thirty minutes."

■ Plaintiffs contend that the opinion rendered in *People v. One Slot Machine,* 303 Ill. App. 337 (abstract opinion), supports the judgment entered by the trial court. In that case the evidence adduced by the prosecution was very meager, and the Appellate court held that there was no evidence to show how the player of the machine could win, "nor did it appear that anyone could win or lose anything." That case has no application to the instant one upon the facts. It was relied upon by the appellant in *People v. One Pinball Machine, supra,* but the court held that it had no application to the facts of the case before the court. We note, however, that the opinion in *People v. One Slot Machine* states:

*"If this machine was a gaming device it was subject to be seized and destroyed. It is not the name of the machine or the labels that appeared thereon which determines its character* but that is determined by the manner and result of its operation. *Mackay v. State,* an Oklahoma case reported in 83 Pac. (2nd) 611. In *Steed v. State,* an Arkansas case reported in 72 S. W. (2nd) 542, the evidence disclosed that the machines seized were so constructed that by putting a nickel in

a slot, ten marbles were released and brought into play one at a time by pulling a lever and then by pulling another lever each marble is shot out to a large board containing holes which are numbered into which the marbles drop and that the patron who gets the largest score wins the game and the prize. The court held that because it appeared that the only reasonable and profitable use to which they might be put was use in a game of chance, they were in fact gambling devices within the meaning of the code provisions of that state.'' (Italics ours.)

Plaintiffs contend that defendants failed to answer their statement of claim and therefore all of the material allegations of the statement were admitted. It is a sufficient answer to this contention to say that no such point was made upon the trial; that the case was tried upon the merits and without reference to the state of the pleadings.

We have considered the argument of plaintiffs that the judgment is not against the manifest weight of the evidence, and find it without merit.

Plaintiffs contend that defendants have no right of appeal from the instant judgment as they are mere stakeholders of the slot machines, and they are bound to obey the order of the court to turn over the machines and money to plaintiffs. Plaintiffs concede that this contention ''presents a novel suggestion,'' and they admit that ''it may not be vital to the more important issues here involved.'' As defendants were not mere stakeholders there is no merit in the contention.

We have considered several other contentions raised by plaintiffs, but it would unduly extend this opinion to refer specifically to them. We find them without merit.

It is conceded that the Loyal Order of Moose is a very worthy organization and carries on splendid charitable works, but under the evidence and the law

we would not be justified in sustaining the judgment of the trial court. The law in question applies to all. The judgment of the Municipal court of Chicago is reversed.

*Judgment reversed.*

SULLIVAN, P. J., and FRIEND, J., concur.